**In re the Marriage of Maureen Carole BECK, formerly Maureen Carole Kaplan, Petitioner, Respondent,**

v.

**Samuel Louis KAPLAN, Appellant.**

**No. C0–95–1153.**

Supreme Court of Minnesota.

Aug. 14, 1997.

Rehearing Denied Sept. 17, 1997.

John D. French, Mary Cullen Yeager, James J. Hartnett, IV, Faegre & Benson, Minneapolis, Frank R. Berman, Minnetonka, for Appellant.

A. Larry Katz, Robert W. Due, Elizabeth B. Bowling, Katz & Manka, Ltd., Minneapolis, for Respondent.

## OPINION

ANDERSON, Justice.

Samuel Louis Kaplan appeals from the court of appeals' decision affirming the district court's order modifying the permanent maintenance award to his former spouse, Maureen Carole Beck, and awarding Beck a portion of her attorney fees. The district court increased Beck's maintenance from $1,800 to $4,000 per month, added an automatic cost-of-living adjustment clause, and awarded attorney fees in the amount of $53,-000. The court based its decision to modify maintenance on a substantial change in circumstances which rendered the original decree unreasonable and unfair. The changed circumstances cited by the court were the increase in the cost of living, Kaplan's significant increase in income, and Beck's relatively static income level. At issue is whether the district court abused its discretion with re-

gard to either the amendment of the judgment and decree or the award of attorney fees. We reverse the order amending the judgment and decree and affirm the award of attorney fees.

Critical to our inquiry into the propriety of the spousal maintenance modification are the facts and circumstances upon which the parties' 1974 negotiated stipulation was based. This stipulation was ultimately incorporated into the judgment and decree of marital dissolution.

Beck and Kaplan were married on September 7, 1958. During the first year of the marriage, Kaplan completed his second year of law school at the University of Minnesota and Beck graduated with honors from the University of Minnesota with degrees in art history and philosophy. The parties had two children and while Kaplan pursued his law career, Beck performed traditional homemaker responsibilities including the caretaking of the children. In 1970, Beck began to pursue her interest in art by taking classes, painting, and beginning to exhibit her art.

When the parties separated in late 1972, Kaplan continued to provide Beck with financial support. Beck served a petition for marital dissolution on July 13, 1973. Both parties retained counsel and began negotiating issues of spousal maintenance, child support, and a division of the marital property. The stipulation produced by these negotiations was executed on September 3, 1974. By its terms, Beck was awarded sole custody of the minor children, with child support of $350 per month per child; permanent spousal maintenance of $1,800 per month to terminate upon her death or remarriage, but not subject to reduction in the event her employment or earnings situation improved; the parties' homestead valued at $100,000, but subject to a mortgage in the amount of $47,-000; and household goods, personalty, and $36,000 in cash. Kaplan was awarded the remaining marital property, including the parties' business interests subject to any indebtedness. The record discloses that during these negotiations, Beck proposed the inclusion of a cost-of-living adjustment clause for the spousal maintenance award, but Kaplan resisted and no such provision was added

to the stipulation. The stipulation was incorporated in the judgment and decree entered on September 5, 1974.

Nineteen years later, on August 3, 1993, Beck moved the district court pursuant to Minn.Stat. § 518.64 (1992) for a modification of the permanent spousal maintenance award from $1,800 to $6,000 per month. She grounded her motion on a claimed substantial increase in the cost of living, a substantial increase in her expenses, and a substantial increase in her former spouse's income in the 19 years following the dissolution.

The referee found that the substantial increases in the cost of living and in Beck's needs, together with the increases in Kaplan's earnings, rendered the existing award unreasonable and unfair. The referee increased the maintenance award to $4,000 per month and awarded Beck $5,000 in attorney fees. In addition, the referee ordered an automatic biennial cost-of-living adjustment for the maintenance award. On both parties' appeal to the district court and after an evidentiary hearing, the court affirmed the modification of the permanent maintenance award and the inclusion of a cost-of-living adjustment and increased the attorney fee award to $53,000. The court found that Beck's living expenses were reasonable, acknowledged Kaplan's ability to pay increased maintenance without any adverse impact on either his financial condition or his standard of living, and concluded that "the increase in the cost of living coupled with [Kaplan's] significant increase in income and [Beck's] relatively static income level, when taken as a whole, constitute a substantial change in circumstances * * *." In the court's view, that substantial change rendered the original award unreasonable and unfair under Minn. Stat. § 518.64, subd. 2.

While Kaplan advances a number of alternative arguments challenging the increase in the spousal maintenance award and the inclusion of an automatic biennial cost-of-living adjustment of that award, the two arguments to which we direct our attention are that Beck either waived her statutory right to spousal maintenance modification or that the district court abused its discretion in modifying the permanent maintenance award.

■ First, Kaplan essentially suggests that Beck's unsuccessful efforts to gain inclusion of a cost-of-living clause in the negotiated stipulation should be treated as a waiver of any later entitlement. Our review of the 1974 judgment and decree which incorporated the parties' stipulation leads us to conclude, however, that there was no waiver, explicit or implicit, of Beck's entitlement to seek modification of Kaplan's permanent spousal maintenance obligation. *See Karon v. Karon*, 435 N.W.2d 501, 503–04 (Minn. 1989) (when we approved and enforced the parties' *express* waiver by stipulation of any right to seek a spousal maintenance modification), and *Loo v. Loo*, 520 N.W.2d 740, 745 (Minn.1994) (when we cautioned that, to have binding effect, a stipulated waiver must contain both the contractual waiver of the statutory right to seek modification and express language divesting the trial court of its continuing jurisdiction to entertain such motion). Accordingly, the district court has retained its jurisdiction to entertain a motion for modification.

■ Because we hold that the district court retained its jurisdiction to consider Beck's motion for modification, the questions remain as to what effect, if any, Beck's unsuccessful efforts to insert a cost-of-living clause in the judgment and decree should have had on the district court's ultimate conclusion that circumstances had substantially changed so as to render the original award unreasonable and unfair and whether the district court abused its discretion in modifying the maintenance award from $1,800 to $4,000 per month and adding a cost-of-living adjustment.

■ Minnesota Statutes section 518.64, subdivision 2 provides in pertinent part as follows:

The terms of an order respecting maintenance or support may be modified upon a showing of one or more of the following: (1) substantially increased or decreased earnings of a party; (2) substantially increased or decreased need of a party * * *; (3) receipt of assistance * * *; (4) a change in the cost of living for either party * * *, any of which makes the terms unreasonable and unfair * * *.

A movant for maintenance modification must not only demonstrate the existence of a substantial change of circumstances, but is also required to show that the change has the effect of rendering the original maintenance award both unreasonable and unfair. *See Nardini v. Nardini*, 414 N.W.2d 184, 198 (Minn.1987); *Rydell v. Rydell*, 310 N.W.2d 112, 115 (Minn.1981).

■ When a stipulation fixing the respective rights and obligations of the parties is central to the original judgment and decree, the district court considering the modification motion must appreciate that the stipulation represents the parties' voluntary acquiescence in an equitable settlement. *Claybaugh v. Claybaugh*, 312 N.W.2d 447, 449 (Minn.1981). In that regard, we have cautioned the district court to exercise its considerable discretion carefully and only reluctantly when it is faced with a request to alter the terms of an agreement which was negotiated by the parties. *Claybaugh*, 312 N.W.2d at 449 (*citing Sieber v. Sieber*, 258 N.W.2d 754 (Minn.1977)); *Kaiser v. Kaiser*, 290 Minn. 173, 179, 186 N.W.2d 678, 683 (1971).

While we accept the referee's findings of fact that Kaplan's income has greatly increased in the 19 years since the marriage was dissolved and that the cost of living has increased 278% during that same period, we cannot agree that those changes compel the conclusion that the original decree has been thereby rendered unreasonable and unfair as contemplated by Minn.Stat. § 518.64, subd. 2. These parties thoroughly negotiated their stipulation with the assistance of counsel and no evidence was offered to demonstrate that Beck did not or could not anticipate the inevitable increases in the cost of living or in her former spouse's earning capacity. To the contrary, Beck sought but failed to negotiate the cost-of-living adjustment in 1974. It is neither unreasonable nor unfair to hold the parties to their original negotiated agreement which at the time it was made undoubtedly balanced their compromised interests. Accordingly, the order of the district court granting the motion for modification and amending the judgment and decree of marital dissolution by increasing the permanent

spousal maintenance award and adding a cost-of-living adjustment is reversed on the basis that the order constitutes an abuse of the district court's discretion.

■ In connection with the modification proceedings, the district court ordered Kaplan to pay $53,000 of the attorney fees Beck claimed to have incurred. The court found that Beck did not have the means to pay the fees, reasoning that to satisfy this obligation, Beck would be required to deplete "the limited capital assets available to her for her retirement." *See* Minn.Stat. § 518.14 (1992). Kaplan has not persuaded us that the court abused the considerable discretion it is accorded in matters of this nature, particularly given the parties' disparate financial circumstances. *See Kiesow v. Kiesow,* 270 Minn. 374, 389, 133 N.W.2d 652, 663 (1965).

Reversed in part and affirmed in part.

GARDEBRING, PAGE, and BLATZ, JJ., took no part in the consideration or decision of this case.