Anne T. KEMP, petitioner, Respondent,

v.

Eugene G. KEMP, Appellant.

No. C6–99–1814.

Court of Appeals of Minnesota.

April 18, 2000.

Tsippi Wray, St. Paul, MN (for respondent).

Gregory J. Holly, McGuigan & Holly, P.L.C., St. Paul, MN (for appellant).

Considered and decided by KLAPHAKE, Presiding Judge, CRIPPEN, Judge, and SHUMAKER, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Eugene Kemp moved to reduce or terminate his permanent spousal maintenance obligation, based on his loss of dividend income and on respondent Anne Kemp's increased income and reduced expenses since the time of the parties' divorce in 1991. He appeals from the district court's affirmance of a family court referee's decision to reduce his maintenance obligation from $900 to $500 per month. Because the findings on respondent's net income fail to consider her dividend income and otherwise fail to accurately calculate her net income based on the available evidence, we reverse and remand for findings on respondent's need for continued maintenance.

## FACTS

The parties divorced in 1991 after a 37-year marriage. The judgment incorporated the parties' stipulation.

At the time of the divorce, appellant was 61 years old. He was self-employed as a counselor, with an average net monthly income of $1,584. The parties agreed that appellant would receive the parties' stock in several closely-held corporations, which at that time generated gross monthly dividend income of $2,914. Appellant's monthly expenses were $2,110.

Respondent, who was 58 years old at the time of the divorce, was a traditional homemaker. Beginning in 1973, however, respondent taught English part time; by 1991, she was employed full time as a seventh grade English teacher and earned a gross annual salary of $21,452. The parties agreed that respondent would be awarded stock, which was received during the marriage from her father[1] and which generated an average of $348 per month in dividend income. Respondent's monthly expenses at the time of the divorce were $5,291, which included a $1,092 mortgage payment and $550 in expenses directly related to the homestead, which was for sale at the time of the divorce.

Under the terms of the stipulation, appellant agreed to pay permanent spousal maintenance of $900 per month, to "terminate upon the death or remarriage of [respondent], or the death of [appellant], whichever event shall first occur." Due to cost-of-living increases, appellant's maintenance obligation rose to $954 by 1998.

In 1998, appellant lost his dividend income when the majority shareholder of the closely-held corporations sold the businesses. Appellant received $127,000 in gross proceeds from the sale. From this amount, he paid $32,000 in taxes, reinvested $75,000 in another closely-held corporation, paid off his automobile loan, and paid $8,000 to purchase rental property.[2] Although he receives no dividend income from the new closely-held corporation, he claims the corporation plans to go public in the next year or two.

In December 1998, appellant served respondent with a motion to reduce or terminate his maintenance obligation. In support of his motion, appellant submitted an affidavit in which he set out the factual basis for his claim. Appellant is now 70 years old and retired from his principal occupation as a counselor. He underwent surgery in February 1998, after being diagnosed with cancer. He receives social security income of $1,000 per month. His current monthly expenses are $1,955. To supplement his social security income, appellant works several part-time jobs and grosses approximately $1,465 per month. He estimates his net monthly income from all sources to be $2,100. His net worth remains at approximately $160,000.

Based on materials he received from respondent during discovery, appellant estimated respondent's current gross monthly income at $3,517 and her dividend income at $690, for a net monthly income of $3,281. Appellant further estimated respondent's monthly expenses, not including repayment of her stock margin account, at $2,750. Finally, appellant claimed: (1) the value of respondent's stocks have increased substantially, from $220,200 at the time of the divorce to their current value of $603,991; (2) respondent has a vested pension that would presently pay her $500 per month; and (3) respondent has been able to fund an additional, voluntary retirement plan with a present balance of almost $75,000.

Respondent, who is now 67 years old, opposed appellant's motion and claimed that she continues to need maintenance. She claimed her monthly expenses are $3,375. With respect to her income, she offered no calculation and merely submitted two paycheck stubs. Regarding the

1. Although respondent characterizes the stocks she was awarded in the divorce as an inheritance, the judgment does not identify these stocks as nonmarital property. To the contrary, these stocks were included in the judgment as part of the marital estate. Under these circumstances, we must assume that respondent's father gave these stocks to both parties.

2. Although respondent argued to the referee that appellant acted unwisely in his reinvestment decisions regarding this $127,000 and that income should be imputed to him as if he received a seven percent return on these proceeds, the referee found appellant's actions were reasonable and refused to impute income to him. Respondent does not challenge the referee's rejection of her imputation of income argument or the findings on this issue.

dividend income she receives from the stocks she was awarded in the dissolution decree, respondent states:

> When I purchased the condominium in which I reside at the present time, I had to borrow against my margin account, the entire down payment on my residence. Therefore, all the dividends that were generated on my portfolio have been paying back directly to replenish the margin account, as I had been advised by my financial advisor. Consequently, I do not really receive any dividends, and I have not received any for the last few years, and I cannot claim that as an income for purposes of "operating" funds.

At the hearing before the referee, respondent conceded that appellant had shown that some reduction was warranted. The referee found that appellant's current net monthly income totals $2,140 and that his current monthly budget is $1,955. The referee found respondent's monthly expenses are $2,745, an amount that does not include the $630 monthly payment to her margin account. The referee further found that respondent's net monthly income, using her paycheck stubs and the standard tax tables, and allowing her deductions for health insurance and a retirement contribution, totals $1,940. The referee found that both parties' claimed monthly expenses were reasonable.

The referee concluded that respondent is "unable to meet her necessary monthly expenses solely on her income" and that termination of appellant's maintenance obligation was not appropriate, based on his

> agreement that his obligation was permanent and on the grounds that it would be unfair and unreasonable to permit [him] to meet his own obligations without using the principal of his marital assets while requiring [respondent] to use hers to meet her obligations.

The referee determined that maintenance should be reduced to $500 per month, an amount that "leaves both parties an approximate monthly deficit [of] $300." Fi-

nally, the referee ordered the modification to take effect on March 1, 1999, because appellant's motion was not filed until February 18, 1999.

Appellant sought district court review of the referee's order, seeking amendment of the referee's calculation of respondent's net income and its findings regarding her reasonable monthly expenses. The district court affirmed the referee's decision in all respects.

This appeal followed.

## ISSUES

1. Did the district court abuse its discretion in refusing to make the maintenance modification retroactive to the date appellant served his modification motion?

2. Did the district court abuse its discretion by refusing to terminate maintenance and by setting appellant's maintenance obligation at $500 per month?

## ANALYSIS

### I.

■ The district court made the modification retroactive to March 1, 1999, relying on the date appellant filed his motion, February 18, 1999. Appellant argues that any modification should be made retroactive to December 4, 1998, the date he served the motion.

■ Modification of a maintenance obligation "may be made retroactive" to the date of service of notice of the modification motion. Minn.Stat. § 518.64, subd. 2(d) (1998). Because the word "may" is defined as "permissive," a district court has discretion to set the effective date of a maintenance modification. *See* Minn.Stat. § 645.44, subd. 15 (1998); *Borcherding v. Borcherding,* 566 N.W.2d 90, 93 (Minn. App.1997); *Finch v. Marusich,* 457 N.W.2d 767, 770 (Minn.App.1990).

Appellant served his motion on respondent in December 1998, and claims that his loss of dividend income occurred even be-

fore he served the motion. He was able to continue making maintenance payments, however. In addition, because he did not file the motion in district court until February 18, 1999, his motion was not heard until March 4, 1999. Under these circumstances, it was not an abuse of discretion to set March 1, 1999, as the effective date of modification.

## II.

 This court will not reverse a district court's decision setting or modifying maintenance unless the district court has abused its discretion. *Erlandson v. Erlandson*, 318 N.W.2d 36, 38 (Minn.1982). We may, however, find an abuse of that discretion if the district court's findings are clearly erroneous and against logic and the facts in the record. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984).

 The district court's refusal to terminate appellant's maintenance obligation was based partly on its conclusion that appellant had agreed "that his obligation was permanent." However, appellant's agreement to pay permanent maintenance does not preclude later modification or termination of maintenance. While permanent maintenance does not compel future self-sufficiency by the recipient, it also does not preclude an obligor from subsequently demonstrating that a recipient has, in fact, become self-sufficient. *See Poehls v. Poehls*, 502 N.W.2d 217, 218 (Minn.App. 1993) ("permanent maintenance" is term of art that places burden on obligor to demonstrate that maintenance award should be modified due to changed circumstances).

 Absent language in a stipulation divesting the district court of jurisdiction, the district court retains authority to consider whether changed circumstances warrant modification. *See Claybaugh v. Claybaugh*, 312 N.W.2d 447, 449 (Minn.1981). The stipulation identifies the baseline circumstances against which claims of substantial change are evaluated. *Hecker v. Hecker*, 568 N.W.2d 705, 709 (Minn.1997).

When determining whether a substantial change has rendered the terms of the original decree unreasonable and unfair, the stipulation may be relevant if one party claims this change was not or could not have been anticipated. *See Beck v. Kaplan*, 566 N.W.2d 723, 726 (Minn.1997).

In this case, the stipulation anticipated appellant's continued receipt of dividend income; even respondent has conceded that appellant's loss of that dividend income represents a substantial change in his financial circumstances that warrants a reduction in maintenance. Thus, appellant's agreement to pay respondent permanent spousal maintenance has become nondispositive on the question of whether he is entitled to a reduction or termination of maintenance. *See id.* (without stipulated waiver, parties stipulating to maintenance retain right to seek maintenance modification).

 Once an obligor establishes he is entitled to modification, the needs of the spouse receiving maintenance must be balanced against the financial condition or ability to pay of the spouse providing maintenance. *Dougherty v. Dougherty*, 443 N.W.2d 193, 194 (Minn.App.1989). A recipient's needs are often determined by considering her income and available resources versus her reasonable monthly expenses. *See id.*

 The district court here determined that appellant's maintenance obligation should be reduced to $500, based on its conclusion that respondent is "unable to meet her necessary monthly expenses solely on her income." The district court's findings regarding respondent's income and available resources, however, are clearly erroneous. *See Rutten*, 347 N.W.2d at 50 (findings clearly erroneous if against logic and facts on record). In particular, the district court (1) failed to consider any dividend income that respondent receives from her margin account; (2) based its income determination solely on two paycheck stubs and one deduction

from the standard tax tables, even though respondent itemized deductions; (3) rejected, without comment, appellant's calculation, which was based on respondent's 1997 income tax return and utilized an effective tax rate of 22 percent; and (4) considered, without deciding whether it was reasonable, respondent's voluntary contribution to her 403(b) retirement plan, which amounts to 19 percent of her gross income. *See* Minn.Stat. § 518.552, subd. 2(a) (district court must consider "financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently"); *Lyon v. Lyon*, 439 N.W.2d 18, 22 (Minn.1989) ("A spouse's ability to pay maintenance does not * * * obviate the statutory mandate that the other spouse's own independent financial resources must be considered too."); *cf. State ex rel. Rimolde v. Tinker*, 601 N.W.2d 468, 471 (Minn.App.1999) (when calculating net income for purposes of application of child support guidelines, district court should determine whether voluntary contribution to retirement plan is "reasonable").

 The district court also failed to adequately address appellant's challenges to respondent's claimed monthly expenses of $3,375. The district court merely found that, with the exception of the $630 payment on her margin account loan, respondent's budget "appears reasonable." Because the margin account loan is temporary and more in the nature of an investment, it cannot be considered a necessary, ongoing living expense, and we agree that it cannot be included in respondent's expenses. A more detailed examination of respondent's expenses is necessary in this case. *See Bliss v. Bliss*, 493 N.W.2d 583, 587 (Minn.App.1992) (balance between maintenance recipient's needs and obligor's ability to pay "can only be struck when the [recipient's] needs are, in fact, determined"), *review denied* (Minn. Dec. 15, 1992).

Finally, it is undisputed that appellant has little ability to pay maintenance, and it appears that respondent may have income available and resources to meet her reasonable monthly needs. Absent a demonstrated need, appellant's continuing maintenance obligation should be terminated. *See Lyon*, 439 N.W.2d at 22 (maintenance depends on showing of need).

## DECISION

The district court's order affirming the referee is reversed. The matter is remanded for findings on respondent's need for continued maintenance, considering her net income and available resources and her reasonable monthly expenses.

**Reversed and remanded.**