**In re the Matter of Elaine Irene LEE, petitioner, Respondent**

v.

**Raymond Michael LEE, Appellant.**

**No. A07–0110.**

Court of Appeals of Minnesota.

March 25, 2008.

As Amended April 7, 2008.

Review Granted June 25, 2008.

Robert L. Weiner, Robert L. Weiner & Associates, Minneapolis, MN, for respondent.

Timothy W.J. Dunn, St. Paul, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; MINGE, Judge; and SCHELLHAS, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Raymond Michael Lee challenges the district court's order modifying a spousal maintenance award, establishing the current needs of the parties, requiring him to obtain life insurance to secure maintenance payments, and awarding respondent Elaine Irene Lee conduct-based attorney fees for her collection of maintenance arrears judgments. Appellant also asserts that the district court abused its discretion by considering respondent's motions on various maintenance issues and attorney fees when her supporting documents were not timely filed. Appellant further claims that the district court erred by treating his pension benefits as income

available to satisfy his maintenance obligation and by failing to terminate his maintenance obligation after his retirement caused a decrease in his income that left his expenses in excess of his income.

We reverse the district court's order modifying the amount of the maintenance award and requiring appellant to obtain life insurance to secure maintenance payments, reduce respondent's maintenance award to zero, and modify the district court's order so that it retains jurisdiction over the issue of future maintenance, consistent with this opinion. Finally, we affirm the district court's finding of current needs, its award of conduct-based attorney fees, and its application of procedural rules regarding late filings.

## FACTS

The parties' 25–year marriage was dissolved on June 7, 1993, and the original decree awarded respondent permanent spousal maintenance of $650 per month and allocated equally between the parties appellant's pension benefits derived from three separate plans that had accumulated during the marriage. Subsequently, the court similarly divided the interest in two defined benefit pension plans that were omitted from the 1993 decree.

In June 1994, appellant was laid off from his job as a journeyman electrician and moved to reduce his spousal maintenance obligation. On August 17, 1994, the district court reduced spousal maintenance to $341.08 per month because appellant's sole income was his unemployment compensation. Nearly ten years later, on February 27, 2004, the district court reinstated the original $650 per month maintenance obligation retroactive to the date of its previous order and increased the obligation to $825 per month retroactive to November 1, 2003. At that time, respondent had retired from employment due to medical dis-

ability. The court also entered judgment against appellant for maintenance arrears and awarded respondent attorney fees. This court affirmed the February 27, 2004 order. *Lee v. Lee*, No. A04–1070, 2005 WL 949038 (Minn.App. Apr. 26, 2005). Respondent then initiated garnishment proceedings against appellant, incurring further attorney fees.

On July 13, 2005, appellant, now retired, moved to terminate spousal maintenance, based on a decrease in his income and an increase in respondent's income. On August 8, 2005, respondent served and filed a responsive motion, without supporting affidavits, seeking maintenance for the duration of her life, security for spousal maintenance, and attorney fees. Both parties later filed affidavits and objections, and the court heard the matter on August 18, 2005.

In considering the maintenance issue, the district court included in its calculation of appellant's monthly income available for maintenance all payments that he receives from his pension benefit plans, except $795.64, representing the amount respondent receives from her award of pension benefits, for a net income of $3,227.14. Appellant's income, excluding all pension benefits, was $1,555. The court found respondent's net monthly income, excluding spousal maintenance, was $1,674.14. The court also found that neither party submitted reliable evidence of changes in his or her respective expenses after the February 27, 2004 order and therefore used as current expenses that order's findings of $1,950 for respondent and $2,100 for appellant. The court determined that appellant had suffered a substantial diminution in income, making the original maintenance award unreasonable and unfair. The court found that respondent had a monthly shortfall of $275.14, based on deducting her $1,950 in monthly expenses from her

$1,674.14 in net monthly income, while appellant had a monthly surplus of $1,127.14, based on deducting his $2,100 in monthly expenses from his $3,227.14 in net monthly income. The court then "balanc[ed] . . . the parties' surpluses and shortages" to reduce spousal maintenance to $700 per month, making the award retroactive to May 1, 2006. The court also ordered appellant to secure payment of spousal maintenance by obtaining a life insurance policy naming respondent as the beneficiary and ordered him to pay attorney fees for the collection of previous maintenance arrears judgments, but the court denied both parties' motions for attorney fees for the present proceedings.

## ISSUES

1. Did the district court err in modifying appellant's spousal maintenance obligation based on a calculation that included appellant's pension benefits as income available to satisfy his maintenance obligation?

2. Did the district court err by using the parties' past expenses to establish their current needs in determining whether to modify spousal maintenance?

3. Did the district court abuse its discretion by modifying spousal maintenance retroactive to a date with no factual basis in the record?

4. Did the district court abuse its discretion by ordering appellant to obtain life insurance to secure the payment of spousal maintenance?

5. Did the district court abuse its discretion in its award of attorney fees?

6. Did the district court abuse its discretion by considering respondent's motion for lifetime spousal maintenance, security for spousal maintenance, and attorney fees, when supporting documents were untimely filed?

## ANALYSIS

### I. Spousal Maintenance

A district court may modify an order for spousal maintenance upon a showing of a substantial increase or decrease in the gross income or need of either party that makes the terms of the original order "unreasonable and unfair." Minn.Stat. § 518A.39, subd. 2 (2006). "Findings of fact concerning spousal maintenance must be upheld unless they are clearly erroneous." *Gessner v. Gessner,* 487 N.W.2d 921, 923 (Minn.App.1992). A finding of fact "induced by an erroneous view of the law" is clearly erroneous. *Reserve Mining. Co. v. State,* 310 N.W.2d 487, 490 (Minn.1981).

Appellant challenges the district court's inclusion of his pension plan benefits as income for purposes of determining the amount of modified maintenance. In arriving at the amount of pension benefits available for maintenance, the district court made a simple calculation that subtracted from appellant's total monthly pension receipts the amount that respondent received as a property award and determined that the difference was income to appellant that is available to pay maintenance. Because appellant had accrued pension benefits for nine years before the marriage, for 25 years during the marriage, and for an indeterminate amount of time after the marriage, we analyze each accrual period of pension benefits separately.

### A. Marital Pension Benefits

■ In the original dissolution decree, the district court awarded respondent one-half of the pension appellant had "accumulated during the marriage." As such, that award was a division of marital property under Minn.Stat. § 518.58, subd. 3(a)

(2006). Alternatively, the district court could have ordered payments from the pension funds as maintenance, in either periodic payments or a fixed dollar amount. Minn.Stat. § 518.581, subd. 1 (2006).

On the modification motion, the district court correctly recognized that pension benefits awarded as marital property are not also available for payment of maintenance. But the district court also found that the benefits appellant received in excess of the benefits received by respondent were available for maintenance. Appellant argues that this finding is clearly erroneous. We agree, concluding that the district court failed to apply the principles set forth in *Kruschel v. Kruschel*, 419 N.W.2d 119 (Minn.App.1988), and *In re Marriage of Richards and Richards*, 472 N.W.2d 162 (Minn.App.1991), and instead relied on *Walker v. Walker*, 553 N.W.2d 90 (Minn. App.1996).

In *Kruschel*, this court addressed whether pension benefits awarded as property may also be used as income for maintenance purposes, holding that all pension benefits received by a maintenance obligor, who is awarded the benefits as property, are to remain a property award until the obligor receives "an amount equivalent [to the value of the pension benefits] as determined in the original property distribution." *Kruschel*, 419 N.W.2d at 123. In *Richards*, this court, noting that the purpose of *Kruschel* was to "avoid" a post-decree redistribution of property, applied *Kruschel* to conclude that "income representing the appreciation of the pension after the divorce [is not] immediately available for maintenance" until benefits equal to the value of the original property award are fully received by the party to whom they were awarded. *Richards*, 472 N.W.2d at 166.

Applying *Kruschel* and *Richards* here, we conclude that until appellant receives the full value of the portion of his pension benefits awarded to him by the original decree, any benefits he receives constitute marital property previously awarded to him. While neither party provided any evidence to establish the value of the pension benefits awarded at the time of the original decree, it is clear that for the foreseeable future, appellant's monthly benefits payments will not equal that full value.

Respondent claims that the district court's findings relied on *Walker* and therefore are not clearly erroneous. Any such reliance was misplaced, because *Walker* acknowledges *Kruschel's* handling of pension benefits as the rule of law but applies the parties' stipulation to uphold a different valuation of pension benefits. *Walker*, 553 N.W.2d at 94. In *Walker*, the parties had stipulated to a specific value of the marital portion of a pension based on anticipated annual benefits payments, and this court affirmed the district court's decision that applied the parties' stipulation to conclude that any receipts in excess of the stipulated amount could be considered income for determining maintenance. *Id.* *Walker* was thus premised on the existence of the stipulation and is not authoritative here. *See, e.g., LaBelle v. LaBelle*, 302 Minn. 98, 115–16, 223 N.W.2d 400, 410 (1974) (allowing parties to stipulate to dissolution provision not required by law); *Gatfield v. Gatfield*, 682 N.W.2d 632, 637 (Minn.App.2004) (same), *review denied* (Minn. Sept. 29, 2004). Accordingly, we conclude that *Kruschel* and *Richards* continue to state the correct legal principles applicable to this case, and we therefore reverse the district court's finding on appellant's income available for maintenance purposes.

## B. Nonmarital Pension Benefits

■ 1. *Premarital.* Appellant acquired more than nine years of pension benefits before marrying respondent. Appellant argues that the district court's simple subtraction of the amount of benefits respondent was awarded from pension payments appellant received, and its characterization of the difference as income, erroneously converted his premarital, nonmarital pension rights to income available for distribution as maintenance. We agree.

"Maintenance" is defined by statute as an award of payments from *future income or earnings.* Minn.Stat. § 518.003, subd. 3a (2006). To include pension benefits accrued *before* marriage, the receipt of which is delayed until a later date, as "future income," is to ignore the fact that payment of pension benefits is really a distribution of an investment comprising employer contributions for work performed during a certain period, employee contributions for that same period, and appreciation on that investment. If the word "future" in the definition of "future income and earnings" is to have any meaning, it refers to a time frame. *See* Minn.Stat. § 645.16 (2006) (requiring a statute to be construed to "give effect to all its provisions"). Because appellant's receipt of accrued premarital pension benefits is not a receipt of "future income," but rather a receipt of property, it is not available for maintenance purposes.

Other references to pension benefits found in the marital dissolution statutes are also instructive on this question. Minnesota law provides that "vested public or private pension rights acquired by the parties ... during the existence of the marriage" are items of marital property subject to division. Minn.Stat. § 518.003, subd. 3b (2006). Conversely, "nonmarital property" is acquired before and after the marriage relationship. *Id.* Minnesota law provides for the award of one party's nonmarital property to the other only after a finding of "unfair hardship," and when such hardship is found, a district court may award only up to one-half of the nonmarital property to the other party. Minn.Stat. § 518.58, subd. 2 (2006). By construing accrued premarital pension benefits as "future income" instead of nonmarital property, the full amount of the premarital pension benefits may be awarded as "future income" for maintenance purposes in the absence of hardship, while upon the occurrence of a hardship, only one-half of the premarital pension benefits may be invaded. Such a construction lacks logic and common sense.

■ Further, we observe that statutory changes in the definition of "income," as it applies to child support and maintenance, suggest that the legislature intended to include premarital pension benefits as income for purposes of calculating child support, but not for awarding maintenance. Historically, the statute, entitled "Maintenance, Support, Property," included in its preliminary "definitions" section a definition of "income" that included "pension ... payments." Minn.Stat. § 518.54, subd. 6 (2004). This definition of income was repealed in 2006, however. 2006 Laws ch. 280, § 47. The current statute does not define "income" for purposes of maintenance and generally bases a maintenance award on one party's need for it and the other party's ability to pay it while satisfying his or her own needs. Minn.Stat. § 518.552 (2006). By contrast, the current child support statute is more detailed and elaborate and provides a definition of "gross income" that includes "pension ... benefits," Minn.Stat. § 518A.29 (a) (2006), but refers to this definition only for setting a child support obligation. Minn.Stat. § 518A.35 (2006). To the extent that the earlier statute was rather imprecise in its

treatment of income for purposes of awarding maintenance or child support, and to the extent that the current statute separately refers to the general provisions on maintenance and the detailed provisions on child support, we conclude that the legislature intends the definition of income to apply to child support and not to maintenance.

■ For all of these reasons, we conclude that receipt of premarital accrued pension benefits is a receipt of property, not "future income" available for maintenance. Because the district court's finding of income included all accrued pension benefits, we reverse the district court's finding that all of appellant's pension benefits, less only the portion equal to that received by respondent, are available for maintenance purposes.

■ 2. *Postmarital Pension Benefits.* Appellant continued to work and accrue pension benefits following the dissolution decree. He argues that his postmarital pension benefits are also nonmarital property rights and should not be deemed "future income," asserting that postmarital pension benefits are no different from premarital pension benefits. Were this a case of first impression, we might be inclined to agree with appellant. But *Kruschel* and its progeny recognize that after pension payments equal to the value of the original property award are fully received, further payments may be treated as income for maintenance purposes. *Kruschel*, 419 N.W.2d at 123; *see, e.g., Richards*, 472 N.W.2d at 166. While these cases do not analyze the difference between "income" and "future income," we decline to interfere with this longstanding precedent and characterization of post-dissolution acquired pension benefits. *See St. Aubin v. Burke*, 434 N.W.2d 282, 284 (Minn.App.1989) (noting that this court is required to follow established judicial precedent), *review denied* (Minn. Mar. 29, 1989). We conclude that *Kruschel* and its progeny are settled law in this area, and therefore affirm the rule that after the receipt of pension payments equal to the value of a marital property award, postmarital pension benefits may constitute items of "future income" available to support maintenance.[1]

## C. Needs

■ Once a maintenance obligor establishes entitlement to modification of a maintenance order, the court must balance the needs of the obligee against the obligor's financial condition or ability to pay to determine the amount of maintenance award. *Kemp v. Kemp*, 608 N.W.2d 916, 921 (Minn.App.2000). The court must determine the parties' expenses, as well as income, to determine the need for maintenance and the obligor's ability to pay. *Bliss v. Bliss*, 493 N.W.2d 583, 587 (Minn. App.1992), *review denied* (Minn. Feb. 12, 1993). Appellant asserts that the district court erred by using its 2004 findings on the parties' expenses, rather than making current findings based on the evidence presented at the August 18, 2005 hearing. But the district court reviewed the evidence presented by both sides and determined it to be unreliable, and because the district court's decision to use the 2004 findings of expenses is neither against logic nor the facts in the record, we affirm the district court's findings on the parties' needs. *See Gessner*, 487 N.W.2d at 923.

---

1. We emphasize that in addition to the obligor's receipt of pension payments representing the value of the original marital award, the obligor also must have received pension payments representing the value of the premarital portion of his or her pension before further payments may be treated as income.

■ Appellant also objects to the district court's failure to find persuasive evidence suggesting that respondent's bank statements do not substantiate her claimed expenses. However, a determination of a party's monthly expenses for maintenance purposes is not measured by actual expenditures in a limited period, but by the marital standard of living. Minn.Stat. § 518.552, subds. 1, 2(c) (2006); *see Chamberlain v. Chamberlain,* 615 N.W.2d 405, 409–12 (Minn.App.2000) (discussing importance of the marital standard of living in determining maintenance recipient's reasonable monthly expenses), *review denied* (Minn. Oct. 25, 2000). Appellant's proffer of evidence that included only two months of respondent's expenses was insufficient to establish her expenses in relation to the marital standard of living, and the district court did not err in declining to base its needs findings on this evidence.

### D. Award

■ We have determined that the district court erred by attributing to appellant as "future income" premarital pension benefits and pension benefits awarded to appellant as marital property, and using those benefits to calculate a modified maintenance obligation. Excluding all pension benefits, appellant's monthly income is $1,555, and his monthly expenses are $2,100. Consequently, appellant does not have the current ability to pay maintenance. *See* Minn.Stat. § 518A.39, subd. 2 (2006). That condition would normally terminate such a maintenance obligation, but we instead modify the dissolution decree to allow the district court to retain jurisdiction over the issue of maintenance, because at some future date appellant's "future income" may again exceed his expenses and merit an award. But because the district court erred in modifying respondent's maintenance award to $700 per month, we order it reduced to zero.[2]

### E. Retroactivity

■ Modification of a maintenance obligation "may be made retroactive" to any date during which a modification motion is pending, but not before the date of service of the motion. Minn.Stat. § 518A.39, subd. 2(e). "Because the word "may" is defined as "permissive," a district court has discretion to set the effective date of a maintenance modification." *Kemp,* 608 N.W.2d at 920; *see* Minn.Stat. § 645.44, subd. 15 (2006) (defining "may" as "permissive" in Minnesota statutes). But here the district court gave no rationale for its choice of May 1, 2006, a date without any significance in the record. We therefore order that appellant's maintenance obligation should be reduced to zero retroactive to July 13, 2005, the date of his modification motion.

### F. Insurance

■ Appellant argues that the district court erred by ordering him to procure insurance for respondent's benefit as security for payment of spousal maintenance in the event of his death. Because we have determined that appellant's current spous-

---

2. In arriving at a modified maintenance award of $700 per month, the district court "balanc[ed] ... the parties' surpluses and shortages[.]" We comment on the district court's action only to note that equalization of the parties' incomes by an adjustment of maintenance is without authority or precedent. Once an obligor establishes that he is entitled to modification, the court must then balance the needs of the spouse receiving maintenance against the obligor's ability to pay. *Kemp v. Kemp,* 608 N.W.2d 916, 921 (Minn.App.2000). Given that appellant's monthly income, excluding all pension benefits, is $1,555 and his monthly expenses are $2,100, appellant does not have the ability to pay maintenance.

al maintenance obligation should be zero, there is nothing to secure. We also note that the district court could order life insurance only after ascertaining appellant's insurability and the cost of such insurance. *See Frederiksen v. Frederiksen,* 368 N.W.2d 769, 777 (Minn.App.1985) (remanding to determine ability of maintenance obligor to provide insurance to secure maintenance payments without imposing an unfair burden on obligor when the record contained no information on obligor's insurability or cost of insurance).

## II. Attorney Fees and Late Filings

■ "An award of attorney fees rests almost entirely within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." *Crosby v. Crosby,* 587 N.W.2d 292, 298 (Minn. App.1998) (quotation omitted), *review denied* (Minn. Feb. 18, 1999). A district court shall award need-based attorney fees if it finds that the fees are necessary for the good-faith assertion of a party's rights, the party from whom fees are sought has the means to pay them, and the party to whom fees are awarded does not have the means to pay them. Minn.Stat. § 518.14, subd. 1 (2006). The district court may also award conduct-based fees, regardless of need, "against a party who unreasonably contributes to the length or expense of the proceeding." *Id.* The district court found that each party could afford to pay his or her own attorney fees for the current proceedings, and therefore denied need-based fees to respondent. But the court also found that respondent incurred $1,699 in attorney fees and costs in attempting to collect on previous judgments for maintenance arrears and that these fees and costs were reasonable. Respondent argues that the court abused its discretion in failing to award attorney fees relating to the present motions; appellant argues that the court abused its discretion in awarding

conduct-based fees and that respondent is not entitled to these fees because she failed to file an attorney affidavit contemporaneously with her fees motion.

■ Minn. R. Gen. Pract. 119.02 provides that an attorney affidavit must accompany motions for attorney fees of $1,000 or more. When a district court "is familiar with the history of the case and has access to the parties' financial information," it may waive submission of an attorney affidavit. *Gully v. Gully,* 599 N.W.2d 814, 826 (Minn.1999). In *Gully,* the Minnesota Supreme Court affirmed a district court's grant of need-based attorney fees despite a party's failure to file an attorney affidavit. *Id.* The court based its holding on the advisory committee's comments to rule 119, stating that the rule "is not intended to limit the court's discretion, but is intended to encourage streamlined handling of fee applications." *Id.* (quotation omitted).

Here, the district court had extensive knowledge of the history of the case because the same judge presided over several years of post-dissolution maintenance proceedings. The court also had access to the parties' financial information, as it was included in the record in support of their respective motions. Thus, we conclude that the district court did not abuse its discretion in awarding conduct-based attorney fees, despite the delinquent filing of the attorney affidavit, and observe no error in the amount of fees awarded. The district court's findings also support its denial of need-based fees to respondent, and its decision is not an abuse of discretion.

■ Appellant also argues that the district court abused its discretion by considering respondent's motion raising new issues because she did not file supporting documents in accordance with the require-

ments of Minn. R. Gen. Pract. 303.03(a)(2). This rule requires a party raising new issues other than those raised in the initial motion to serve opposing counsel and file with the court a notice of motion and motion along with any relevant affidavits, exhibits, and memorandum of law at least ten days before the hearing on such motion. It is within the district court's discretion to rule on a motion despite respondent's late filings. *See Benassi v. Back & Neck Pain Clinic, Inc.*, 629 N.W.2d 475 (Minn.App.2001) (affirming as an exercise of court discretion a decision to allow a late filing despite noncompliance with Minn. R. Gen. Pract. 115.03 requiring supporting documents for responsive motions to be filed and served at least three days prior to the hearing), *review denied* (Minn. Sept. 11, 2001). Further, "[i]t is well settled in this state that where, in a particular case, the interests of justice would be best served by relieving a party from formal compliance with a rule, the trial court, in its discretion, may suspend or relax its operation." *Swenson v. Swenson*, 257 Minn. 431, 434, 101 N.W.2d 914, 917 (1960). While the district court should have allowed appellant time to address respondent's motion, including addressing the cost of insurance to secure maintenance and whether he could afford such insurance, given this court's decision to reduce maintenance to zero, we decline to further address this issue.

## DECISION

The district court erred in considering as "future income" appellant's pension benefits accumulated before the marriage and during the marriage, before appellant has received pension payments equal to the value of the original property award and payments representing the value of the premarital portion. The district court did not err in its findings regarding the parties' expenses, but erred in modifying the maintenance award to $700 per month and making it retroactive to a date that bears no relation to any event in the record. Because appellant does not have the current ability to pay maintenance, we order respondent's maintenance award reduced to zero retroactive to July 13, 2005, but modify the dissolution decree to permit the district court to retain jurisdiction over the issue of maintenance.

The district court also abused its discretion in ordering appellant to obtain life insurance to secure the maintenance payments without first ascertaining appellant's insurability or the cost of such insurance. The district court acted within its discretion by awarding attorney fees for the collection of previous judgments and by considering respondent's responsive motion even though she failed to timely file supporting documents.

**Affirmed in part as modified and reversed in part.**

## ORDER

**BASED ON THE FILE, RECORD, AND PROCEEDINGS, AND BECAUSE:**

1. We filed our published opinion in this matter on March 25, 2008.

2. The panel has determined that it is appropriate to make several non-substantive corrections to the opinion. Accordingly, changes have been made on pages 4, 5, 16, and 17.

**IT IS HEREBY ORDERED** the opinion filed on March 25, 2008 is withdrawn and the attached opinion is substituted.
**BY THE COURT**

/s/ Roger M. Klaphake Opinion Judge