*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1331**

In re the Marriage of:

Steven Edward Stwalley, petitioner,
Respondent,

vs.

Leigh Anne Stwalley,
Appellant.

**Filed June 15, 2026**
**Affirmed**
**Reyes, Judge**

Hennepin County District Court
File No. 27-FA-21-3802

James J. Vedder, Cozen O'Connor, Minneapolis, Minnesota (for respondent)

Jonathan Engel, Jack W. Hicks, Hellmuth & Johnson, PLLC, Edina, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Reyes, Judge; and Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

Wife challenges the modification and reservation of spousal maintenance, arguing that the district court (1) clearly erred when calculating husband's gross income and (2) abused its discretion by imposing the modification retroactively. We affirm.

**FACTS**

In October 2022, the district court entered a stipulated judgment and decree (J&D) dissolving the marriage of respondent-husband Steven Edward Stwalley and appellant-wife Leigh Anne White.[1]

The J&D states that husband worked full time and earned a monthly income of $10,000, in addition to royalty and freelance income of $4,000 annually, while wife worked part-time and earned a monthly income between $2,253 and $3,120. The J&D requires husband to pay wife $2,250 per month in spousal maintenance.

In October 2023, husband was involuntarily terminated from his full-time job as an animator. He received unemployment benefits for the first few months of 2024 and otherwise worked freelance jobs and spent time developing his own artwork and games. On October 7, 2024, husband moved to modify or reserve spousal maintenance. Husband later amended his motion, requesting that he "pay no spousal maintenance to [wife] retroactive to the date of his initial motion (October 7, 2024)."

Husband explained that he had "been unable to secure full-time employment, and [he was] currently earning minimal income from freelance work and the sale of [his] artwork and games in the pre-tax amount of $3,869.91 (average) per month." In her opposition to the motion, wife conceded that her income had also changed following the initial maintenance award, increasing to $4,462 per month.

---

[1] Earlier in this dissolution proceeding, wife requested and received a name change. We use her current name as reflected in her briefing here.

2

After a motion hearing, the district court granted husband's requests to modify spousal maintenance to $0 per month, retroactive to October 7, 2024, and reserve any future spousal-maintenance award. The district court explained that "[i]t *may* no longer be reasonable to expect Husband to earn what he did at the time of the [J&D]," but ordered him to "use his best efforts to secure full-time employment" at his prior salary and report his efforts to wife each month.

This appeal follows.

**DECISION**

Wife makes several arguments challenging the spousal-maintenance modification and reservation, which we condense for clarity: She argues that the district court (1) clearly erred when calculating husband's gross income and (2) abused its discretion when it imposed the modification retroactively.

A district court may modify a spousal-maintenance award "if the moving party makes a showing of one or more statutory modification factors, any of which makes the existing maintenance award unreasonable and unfair." *Backman v. Backman*, 990 N.W.2d 478, 485 (Minn. App. 2023) (quotation omitted). One statutory modification factor involves "substantially increased or decreased gross income of an obligor or obligee." Minn. Stat. § 518.552, subd. 5b(b)(1) (2024).

**I.      The district court did not clearly err when calculating husband's gross income.**

Wife argues that the district court clearly erred when calculating husband's gross income because it (1) excluded trust interests and (2) declined to impute potential income to husband. We disagree with both assertions.

3

"A district court's [calculation] of income for maintenance purposes is a finding of fact and is not set aside unless clearly erroneous." *Peterka v. Peterka*, 675 N.W.2d 353, 357 (Minn. App. 2004). Under the clear error standard of review, appellate courts (1) view the evidence in a light favorable to the findings; (2) do not engage in fact-finding; (3) do not reweigh the evidence; and (4) do not reconcile conflicting evidence. *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221-22 (Minn. 2021); *see also Ewald v. Nedrebo*, 999 N.W.2d 546, 552 (Minn. App. 2023) (citing *Kenney* in family law appeal), *rev. denied* (Minn. Feb. 28, 2024). Appellate courts also defer to a district court's credibility determinations. *See Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988).

The definition of "gross income" in Minnesota Statutes section 518A.29 (2024), which includes "any form of periodic payment to an individual," applies to a district court's calculation of gross income for spousal maintenance. Minn. Stat. § 518A.29(a); *see Lee v. Lee*, 775 N.W.2d 631, 635 n.5 (Minn. 2009). Section 518A.29(a) provides a nonexclusive list of examples of "periodic payments," which includes "salaries, wages, commissions, . . . and potential income under section 518A.32."

A district court may impute "potential income" to a party if that party "is voluntarily unemployed, underemployed, or employed on a less than full-time basis, or there is no direct evidence of any income." Minn. Stat. § 518A.32, subd. 1 (2024). In order to impute potential income to an obligor, the district court must make "a finding of bad faith or unjustifiable self-limitation of income." *Melius v. Melius*, 765 N.W.2d 411, 416 (Minn. App. 2009).

**A.    The district court did not clearly err by excluding trust interests from its calculation of husband's gross income.**

The district court stated that it "cannot consider" any future interests husband has in trusts "until they are actually distributed to him." It also found that "there is no evidence of 'periodic' trust payments to Husband to qualify it as 'gross income.'" Lastly, it found husband's statement "that he has never received any trust distributions" credible.

The record includes two letters, dated July 2014 and July 2015, from a trustee of an irrevocable trust. The letters explained that husband had the right to withdraw a certain amount, between $2,000 and $3,000, from the trust within 30 days of the letter's date.[2] In response to interrogatories about trusts, husband explained that he "believes he is listed on four trusts though he has little to no information on them." Husband contended that he "has not received any funds from these trusts or inheritances, nor does he expect to," and that "any even potential interest in" the trusts would have lapsed over a decade earlier.

To the extent that wife challenges the district court's assessment of husband's credibility, we defer to those determinations. *See Sefkow*, 427 N.W.2d at 210. And because the record reasonably supports the district court's factual finding that husband did not receive any distributions from a trust, let alone "periodic payments," we conclude that the district court did not clearly err by excluding trust interests from its calculation of husband's gross income.

---

[2] Five other letters reference withdrawal rights of the parties' children, which the district court declined to consider. Wife does not challenge that decision on appeal.

**B.**     **The district court did not clearly err by finding that husband was not underemployed in bad faith or self-limiting his income, and it did not abuse its discretion by declining to impute potential income to husband.**

It is undisputed that husband was involuntarily terminated from his job in October 2023. The district court found that husband thereafter "obtained part-time consulting income, but not at a level near the amount he was [previously] earning," and "sought full-time employment but has been unsuccessful in obtaining it." The district court explained that, "[t]o impute income to Husband, Wife would need to show that Husband is unemployed or underemployed in bad faith." The district court found "that Husband is [not] underemployed in bad faith or self-limiting his income." Nonetheless, it "order[ed] Husband to use his best efforts to secure full-time employment earning at least what he was earning at the time of the [J&D]." The district court explained that husband must "report to Wife on his job search efforts and offers of employment on a monthly basis while the maintenance is in reserved status." If it becomes clear that husband is "shirking his obligation" to find full-time work, the district court explained that it could "take more permanent action at that time."

The record includes evidence of husband's income from October 2023 through November 2024, comprised primarily of unemployment insurance from early 2024, proceeds from his artwork and games, and freelance income. Husband also provided several retirement-account statements, which indicated that husband withdrew tens of thousands of dollars from retirement accounts in 2024. Husband asserted that he had to withdraw this money and borrow money from his parents to meet his needs, pay for attorneys, and pay his spousal-maintenance obligation.

6

The record also includes a March 2025 vocational report for husband. This report explained that husband "has the skills and ability to return to a position such as an animator"; "similar job titles are available" in his area; these jobs provide salaries "between $80,000 to $90,000/year"; and, if "unable to return to his previous level of earnings," husband "could consider additional freelance opportunities" which were also available in his area. Husband asserted that he "made significant efforts to obtain alternate employment," including applying for positions, networking, and contacting recruiters. He also contended that he spent time "working to expand his marketable skills as an animator, illustrator, and digital artist."

Wife's potential-income arguments are not persuasive for three reasons. First, the record reasonably supports the district court's finding that husband was not underemployed in bad faith or unjustifiably self-limiting his income. Based on our deferential standard of review, we conclude that the district court did not clearly err by making this finding.

Second, wife appears to conflate the burden of proving the *need for spousal-maintenance modification* with the burden of proving that *potential income should be imputed* to an obligor. The former was husband's obligation as the moving party. *See Backman*, 990 N.W.2d at 485. Caselaw does not clearly establish which party bears the burden of proof for the latter. It is clear, however, that the district court may only impute potential income to an obligor if it finds "bad faith or unjustifiable self-limitation of income." *Melius*, 765 N.W.2d at 416; *see also Carrick v. Carrick*, 560 N.W.2d 407, 410 (Minn. App. 1997) (applying similar requirement). The district court here ultimately found

7

neither. As a result, we conclude that the district court did not abuse its discretion by declining to impute potential income to husband.

Third, wife misstates the effect of legislative silence on the longstanding common-law principle, described in *Melius*, that a district court must find bad faith or unjustifiably self-limited income before imputing potential income to an obligor. Appellate courts "presume that the Legislature does not intend to abrogate the common law unless it does so by express wording or necessary implication." *Siewert v. N. States Power Co.*, 793 N.W.2d 272, 281 (Minn. 2011) (quotation omitted); *see also Putz v. Putz*, 645 N.W.2d 343, 351 (Minn. 2002) (declining to view legislative silence as overruling similar common-law requirement in child-support context). Wife first argues, in her principal brief, that legislative silence in recent statutory amendments demonstrates legislative intent to override the common-law requirement described in *Melius*. This contradicts how appellate courts view legislative silence. *See Siewert*, 793 N.W.2d at 281. But then, in her reply brief, wife concedes that the common-law requirement is still good law and asks this court to create a new rule supplanting it. We decline to do so. *See State v. Chauvin*, 955 N.W.2d 684, 690 n.3 (Minn. App. 2021) (explaining "the respect that an appellate court owes to its own precedents"), *rev. denied* (Minn. Mar. 10, 2021).

## II. The district court did not abuse its discretion by imposing the spousal-maintenance modification retroactively.

Lastly, wife argues that the district court abused its discretion by setting a retroactive effective date for the spousal-maintenance modification because it did not "make any

findings" or "show that the date of application is reasonable and fair." Neither argument is persuasive.

We review a district court's determination of a modification's effective date for an abuse of discretion. *See Kemp v. Kemp*, 608 N.W.2d 916, 920-21 (Minn. App. 2000). The district court abuses its discretion when its "findings are clearly erroneous and against logic and the facts in the record." *Id.* at 921. Generally, a district court may make a spousal-maintenance modification retroactive "from the date that the notice of the motion to modify was served on the responding party." Minn. Stat. § 518.552, subd. 5b(d)(2) (2024).

To the extent that wife argues that the district court "did not make any findings" about retroactivity, she appears to misunderstand the district court's order. The district court found that husband lost his job in October 2023, "has experienced a 62% reduction in income," and made credible "representations about his ability to find equivalent work in his field." The district court also found that husband filed and served his modification motion on October 7, 2024, and that he requested any modification to be made retroactive to that date.

To the extent that wife argues that the district court needed to "show that the date of application is reasonable and fair," citing Minnesota Statutes section 518A.39, subdivision 2(a)-(b) (2024), she appears to misunderstand the law in two ways. First, the cited statutory provision references modification "of an order respecting child support," not spousal maintenance. Minn. Stat. § 518A.39, subd. 2(a). Wife does not explain why we should apply that statute rather than section 518.552, which addresses the modification of spousal-maintenance orders. *See* Minn. Stat. § 518.552, subds. 5-8 (2024).

9

Second, wife overlooks the context of the statutory references to reasonableness and fairness. Under both the child-support and spousal-maintenance statutes, the district court may make a modification if *the terms of an existing award* are "unreasonable and unfair." Minn. Stat. § 518A.39, subd. 2(a)-(b); Minn. Stat. § 518.552, subd. 5b(b) (2024). These statutes do not impose a reasonable-and-fair requirement on a modification's effective date. Rather, both statutes permit the district court to set a retroactive effective date to the date that the petitioning party served notice of its motion on the responding party. *See* Minn. Stat. § 518A.39, subd. 2(f) (2024); Minn. Stat. § 518.552, subd. 5b(d)(2). It is undisputed that husband served wife notice of his motion for modification on October 7, 2024.

Because it did not make findings that are clearly erroneous and because its maintenance decision was otherwise not against logic and the facts in the record, we conclude that the district court did not abuse its discretion by setting a retroactive effective date.

**Affirmed.**