In re the Matter of Elaine
Irene LEE, Appellant,

v.

Raymond Michael LEE, Respondent.

No. A07–110.

Supreme Court of Minnesota.

Dec. 3, 2009.

Robert L. Weiner, Robert L. Weiner & Associates, Minneapolis, MN, for appellant.

Timothy W.J. Dunn, St. Paul, MN, for respondent.

Michael Ormond, Joan H. Lucas, Minneapolis, MN, for amicus curiae Minnesota Chapter of the American Academy of Matrimonial Lawyers.

## OPINION

MAGNUSON, Chief Justice.

This case concerns the interpretation of Minnesota's spousal maintenance statutes and the application of these statutes to retirement payments received from pension funds. After respondent Raymond Michael Lee retired, he brought a motion in the district court to modify his monthly maintenance obligation. The court lowered Raymond's maintenance obligation from $825 per month to $700 per month.

Raymond appealed, and the court of appeals eliminated his monthly maintenance payments altogether. Appellant Elaine Irene Lee challenges the holdings of the court of appeals that (1) Raymond's pension benefits earned before marriage, but paid after the marriage dissolution, are not available as a source of spousal maintenance, (2) Raymond's pension benefits earned during marriage and previously awarded to him as marital property should not be considered when determining Raymond's ability to pay maintenance, and (3) Elaine cannot receive any portion of Raymond's pension benefits until Raymond has received the full value of his premarital benefits and benefits previously awarded to him as marital property. Finally, Elaine challenges the court of appeals' modification of the effective date of the district court's order, and the district court's denial of her motion for attorney fees. We affirm in part, reverse in part, and remand.

None of the relevant facts in this case are in dispute. Elaine and Raymond married in 1968. The parties dissolved their marriage in 1993. While they were married, Raymond worked as an electrician and Elaine as a homemaker.

The parties' dissolution decree required Raymond to pay Elaine $650 per month in spousal maintenance. As part of the division of the marital estate, the district court also apportioned pension benefits earned by Raymond through his union while the parties were married equally between the parties, giving Elaine a 50% share, and leaving Raymond with a 50% share.[1]

In 1994, Raymond petitioned the district court to lower his maintenance obligation because he was unemployed and could no longer afford the $650 monthly payment. The court granted Raymond's motion. In 2004, Elaine petitioned the court to increase Raymond's monthly maintenance payment on the grounds that Raymond had returned to work shortly after the court decreased Raymond's maintenance obligation. Elaine also discovered that in addition to the previously awarded benefits, Raymond had an interest in two defined benefit pension plans, the International Brotherhood of Electrical Workers Pension Benefit Fund and the National Electrical Benefit Fund, neither of which was taken into account in the original di-

---

1. On September 22, 1993, the district court entered a Qualified Domestic Relations Order (QDRO). The order identified three pension plans in which Raymond had an interest and as to which, under the provisions of the Internal Revenue Code, ERISA, and the Retirement Equity Act of 1995, Elaine might be designated as "alternate payee"—the St. Paul Electrical Construction Pension Plan, the St. Paul Electrical Construction Workers Supplemental Pension Plan, and the St. Paul Electrical Construction Workers Deferred Compensation Plan. As to the Pension Plan, the order directed the plan administrator to pay 50% of Raymond's monthly pension benefits accruing from September 14, 1968, to June 7, 1993, to Elaine. As to the Supplemental Pension Plan, the order directed the plan administrator to pay 50% of "that portion of the participant's vested account balance under this plan which accumulated from September 14, 1968,

through June 7, 1993." The order provided that the benefit would be paid to Elaine in a single lump sum, payable on August 15, 2003, Raymond's earliest retirement date. As to the Deferred Compensation Plan, the order directed the plan administrator to pay 50% of Raymond's account balance accruing from September 14, 1968, through June 7, 1993. The parties stipulated that the Deferred Compensation Plan had a cash value of approximately $2,614.54 on December 31, 1992. The order provided that payments would begin when Raymond reached the earliest retirement age, defined in the order. The QDRO also specifically provided that the payments called for might be made over time, depending on the elections Elaine might make under the plans. It appears that monthly payments were elected, and neither party challenges that election on appeal.

vorce decree. Elaine asked the district court to award her 50% of the newly-discovered pension benefits Raymond had accrued while Elaine and Raymond were married.

The district court granted Elaine's motion, retroactively reinstated the $650 per month maintenance obligation, and imposed an increased maintenance obligation to $825 per month beginning on November 1, 2003. The court also awarded Elaine a 50% property interest in Raymond's pension benefits that were not accounted for in the original decree.[2] The court of appeals affirmed. *Lee v. Lee,* No. A04–1070, 2005 WL 949038 (Minn.App. Apr. 26, 2005). These developments are relevant only to the extent that when they were over, Elaine and Raymond were each awarded a 50% property interest in all of Raymond's pension benefits earned while the parties were married—valued at $795.64 per month—a valuation that neither party challenges.

In 2005, Raymond retired and began to receive monthly pension benefit payments. Raymond petitioned the district court to lower his monthly maintenance obligation, arguing that his income had decreased in retirement and Elaine's income had increased, due in part to Elaine's receipt of her share of pension benefits earned by Raymond during marriage and previously awarded to Elaine. Elaine opposed Raymond's motion, asked the court to award her maintenance for life, and also asked the court to order Raymond to purchase life insurance to guarantee Elaine lifetime maintenance upon Raymond's death.

The district court began its analysis by calculating the monthly incomes and monthly expenses of the parties. The court found that Elaine received $1,674.14 monthly: $878.50 in Social Security payments and $795.64 from her 50% share of Raymond's pension benefits earned during marriage. The court determined that Raymond received $4,022.78 monthly: $1,555 in Social Security benefits and $2,467.78 in pension benefits, including his 50% share of pension benefits earned during marriage.

The court then subtracted from Raymond's gross monthly income the portion of Raymond's monthly pension payment previously awarded to Raymond as marital property.[3] The court arrived at an adjusted monthly income figure for Raymond of $3,227.14.

The district court then compared the parties' monthly incomes with their reasonable monthly expenses. The court esti-

2. The National Electrical Benefit Fund (NEBF) Defined Benefit Plan provided Raymond with a monthly benefit calculated based on years of service. Under the plan, Raymond received a benefit of $728 per month for his lifetime only. Under the International Brotherhood of Electrical Workers Pension Benefit Fund, from September 14, 1968, through June 7, 1993, Raymond accumulated a pension benefit of $42 per month. Under the IBEW Plan, no benefits were payable to Elaine until Raymond retired.

3. The court of appeals took a different view of the factual record. According to the court of appeals, the $795.64 amount subtracted from Raymond's gross monthly income "rep-resent[ed] the amount [Elaine] receives from her award of pension benefits." *Lee v. Lee,* 749 N.W.2d 51, 55 (Minn.App.2008). In our view of the record, the $795.64 amount subtracted from Raymond's gross monthly income represented his half of the monthly pension payments previously awarded to Raymond as marital property. Elaine's half—also $795.64—was never included in the district court's calculation of Raymond's gross monthly income. As the district court stated after performing the subtraction, the court "include[d] in income only that portion of pension benefits which accrued from the non-marital portion of [Raymond's] pension plans."

mated[4] Elaine's monthly expenses to be $1,950, and Raymond's to be $2,100. The court concluded that "[a] balancing of the parties' surpluses and shortages would result in a reduced spousal maintenance payment of $700 per month."

The court also ordered Raymond to obtain a life insurance policy naming Elaine as the beneficiary in the amount of $75,000. The district court made its order retroactive to May 1, 2006, and denied both parties' requests for attorney fees.

Raymond appealed the district court's order, and the court of appeals reversed, reducing Raymond's monthly maintenance obligation to zero. *Lee v. Lee,* 749 N.W.2d 51, 57 (Minn.App.2008). The court of appeals vacated the district court's order requiring Raymond to procure insurance, on the grounds that Raymond no longer had a maintenance obligation to secure. *Id.* at 60–61. The court of appeals also changed the effective date of the district court's order from May 1, 2006, to July 1, 2005, and on Elaine's cross-appeal, affirmed the district court's denial of need-based attorney fees. *Id.* at 61. We granted Elaine's petition for review.

## I.

Maintenance is defined by statute as "an award made in a dissolution or legal separation proceeding of payments from the future income or earnings of one spouse for the support and maintenance of the other." Minn.Stat. § 518.003, subd. 3a

(2008). Minnesota Statutes § 518A.29 (2008), in turn, states that "gross income includes ... pension and disability payments."[5]

Minnesota Statutes § 518.552 (2008) outlines the conditions and factors courts must consider before awarding maintenance. Section 518.552, subdivision 1, states that:

[T]he court may grant a maintenance order for either spouse if it finds that the spouse seeking maintenance:

(a) lacks sufficient property, including marital property apportioned to the spouse, to provide for reasonable needs of the spouse considering the standard of living established during the marriage, especially, but not limited to, a period of training or education, or

(b) is unable to provide adequate self-support, after considering the standard of living established during the marriage and all relevant circumstances, through appropriate employment, or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

In calculating the appropriate amount and duration of maintenance, the statute provides that "[t]he maintenance order shall be in amounts and for periods of time, either temporary or permanent, as the court deems just, without regard to mari-

---

4. The district court found that "[n]either party submitted reliable evidence of changes in their respective expenses or needs." The district court nevertheless decided to base its findings on "alleged changes" in income and expenses. On appeal, neither party disputes the district court's findings with respect to the parties' monthly expenses.

5. The court of appeals concluded that the definition of "gross income" contained in Minn.Stat. § 518A.29 applies to the calcula-

tion of child support but not maintenance. *See Lee,* 749 N.W.2d at 58–59. Although much of chapter 518A governs child support matters, Minn.Stat. § 518A.26, subd. 1 (2008) expressly states that "[f]or the purposes of this chapter and chapter 518, the terms defined in this section shall have the meanings respectively ascribed to them." We conclude that the legislature intended section 518A.29's definition of gross income to apply to chapter 518, which governs maintenance.

tal misconduct, and after considering all relevant factors." Minn.Stat. § 518.552, subd. 2. The statute lists eight non-exclusive factors for courts to consider when crafting maintenance orders:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to the party, and the party's ability to meet needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment, and the probability, given the party's age and skills, of completing education or training and becoming fully or partially self-supporting;

(c) the standard of living established during the marriage;

(d) the duration of the marriage and, in the case of a homemaker, the length of absence from employment and the extent to which any education, skills, or experience have become outmoded and earning capacity has become permanently diminished;

(e) the loss of earnings, seniority, retirement benefits, and other employment opportunities forgone by the spouse seeking spousal maintenance;

(f) the age, and the physical and emotional condition of the spouse seeking maintenance;

(g) the ability of the spouse from whom maintenance is sought to meet needs while meeting those of the spouse seeking maintenance; and

(h) the contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a home-maker or in furtherance of the other party's employment or business. *Id.*

Minnesota Statutes § 518A.39, subd. 1 (2008), provides that "the court may from time to time, on motion of either of the parties ... modify the order respecting the amount of maintenance." Subdivision 2(a) provides that "[t]he terms of an order respecting maintenance or support may be modified upon a showing of one or more of the following, any of which makes the terms unreasonable and unfair: (1) substantially increased or decreased gross income of an obligor or obligee; (2) substantially increased or decreased need of an obligor or oblige," plus other factors not relevant in this case. *Id.,* subd. 2(d).

Moreover, "[o]n a motion for modification of maintenance, including a motion for the extension of the duration of a maintenance award, the court shall apply, in addition to all other relevant factors, the factors for an award of maintenance under section 518.552 that exist at the time of the motion." Minn.Stat. § 518A.39, subd. 2(d). *Id.,* subd. 2(d).

The legislature also specifically provided direction with regard to the division of marital property. Minnesota Statutes § 518.58, subd. 1 (2008), directs the courts to "make a just and equitable division of the marital property of the parties" based on a number of factors set forth in the statute. That same statute directs the court to value the marital assets for purposes of division between the parties as of a specific date: the date of the initially scheduled prehearing settlement conference, a different date agreed upon by the parties, or a third date if the court makes specific findings that another date of valuation is fair and equitable. *Id.*

Minnesota Statutes § 518.58, subd. 2, addresses awards of nonmarital property. If the district court finds that a spouse's

resources or property, "including the spouse's portion of the marital property," are so inadequate as to "work an unfair hardship," the court may apportion up to one-half of nonmarital property to prevent the unfair hardship. Elaine does not claim that this statute applies in this case.

Minnesota Statutes § 518.58, subd. 4, addresses pension plans. That statute provides that the district court may divide as marital property pension plan benefits or rights in the form of future pension plan payments. *Id.* § 518.58, subd. 4(a). The statute specifically limits the division by making any award "payable only to the extent of the amount of the pension plan benefit payable under the terms of the plan", and prohibits an award of a lump sum amount from a defined benefit pension plan. *Id.*

Finally, Minnesota Statutes § 518.582 (2008) prescribes a procedure for valuing pension benefits or rights. Subdivision 1 of the statute authorizes the district court to appoint a qualified person experienced in the valuation of pension plan benefits or rights to function as an expert witness to value pension plan benefits or rights, and subdivision 4 of that statute provides that parties may, in lieu of valuing pension benefits through the use of a court appointed actuary, "stipulate [to] the present value of pension benefits or rights that are marital property."

Both parties take issue with the court's calculation of Raymond's monthly income. Raymond argues that the district court should have excluded all pension payments from its calculation of his income, because they either consist of non-marital property or of marital property previously awarded to him. Elaine argues that the district court erred by excluding from Raymond's monthly income the portion of Raymond's monthly pension payment previously awarded to Raymond as marital property.

We reject both claims, and hold that the court did not err in calculating Raymond's monthly income.

In dissolution cases, the district court has broad discretion regarding the division of property, spousal maintenance and child support. *Bollenbach v. Bollenbach,* 285 Minn. 418, 427, 175 N.W.2d 148, 154 (1970). The district court's award of maintenance or division of property will only be reversed on appeal if the court abused its discretion. *Hertz v. Hertz,* 304 Minn. 144, 146, 229 N.W.2d 42, 44 (1975). However, statutory construction is a question of law, which we review de novo. *Brookfield Trade Ctr. Inc., v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998).

In analyzing Raymond's monthly pension payments, the court of appeals divided the payments into three categories: (1) pension benefits earned by Raymond before the parties married (pre-marital benefits), (2) pension benefits earned by Raymond after the parties dissolved their marriage (post-marital benefits), and (3) pension benefits earned by Raymond during the period of the parties' marriage (marital benefits). The court of appeals further divided pension benefits into two subcategories: (1) benefits previously awarded as property, and (2) benefits not awarded as property. *See Lee,* 749 N.W.2d at 56–59. The court of appeals analyzed each category separately, asking whether the district court properly included (or excluded) each category of pension payments in the district court's calculation of Raymond's income. *See id.*

**A. Pre–Marital Pension Benefits**

In subtracting from his income only the portion of Raymond's monthly pension payments derived from benefits earned during marriage and previously awarded to him as marital property, the district

court implicitly held that Raymond's pre-marital pension benefits could be included in the court's calculation of his monthly income.[6]

The court of appeals took a different view, holding that pension benefits earned prior to the parties' marriage could not be included when calculating Raymond's monthly income as a matter of law. *Lee,* 749 N.W.2d at 58. The court of appeals concluded that present payments of pension benefits acquired by Raymond before marriage are not "future income or earnings" within the meaning of Minn.Stat. § 518.003, subd. 3a, reasoning that characterizing pre-marital benefits as future income "ignore[s] the fact that payment of pension benefits is really a distribution of an investment comprising employer contributions for work performed during a certain period, employee contributions for that same period, and appreciation on that investment." *Lee,* 749 N.W.2d at 58.

We disagree. "Future income or earnings," as the court of appeals acknowledged, refers to a time frame. In this case, the word "future" limits the potential sources for maintenance to income or earnings received after the marriage has been dissolved (or, more precisely, after the date of valuation, *see* Minn.Stat. § 518.58, subd. 1 (2008)). The crux of the interpretive dispute is whether pension benefits are considered "income or earnings" at the time the benefits are earned or at the time the benefits are received. A review of the applicable statutory provisions convinces us that Raymond's pension benefits not previously awarded as proper-

ty are properly considered "income" at the time the benefits are received.

Minnesota Statutes § 518A.39, subd. 2, the section governing the modification of existing maintenance awards, states that "an order respecting maintenance or support may be modified upon a showing of ... substantially increased or decreased *gross income* of an obligor." (Emphasis added.) "Gross income," in turn, "includes ... pension and disability payments," Minn.Stat. § 518A.29 (2008), without any restriction as to when the pension benefits were earned. The legislature's use of the term "payments" in section 518A.29 is of particular significance, indicating a legislative intent to consider pension benefits as income when the obligor actually receives a disbursement of pension funds. In contrast, the statute governing the division of marital property states that "[m]arital property" includes "vested public or private pension plan benefits or rights, acquired by the parties." Minn.Stat. § 518.003, subd. 3b (2008). Pension rights are also described as "rights in the form of *future pension plan payments.*" Minn. Stat. § 518.58, subd. 4(a) (emphasis added). These provisions demonstrate that the legislature knew how to distinguish between vested pension rights—pension benefits earned but not yet received—and actual pension payments.

The court of appeals also concluded that current payments of pre-marital pension benefits should be characterized as non-marital property, rather than income. *Lee,* 749 N.W.2d at 58. Non-marital property is defined as property acquired before or after the marriage relationship. Minn. Stat. § 518.003, subd. 3b.[7] Assuming (as

**6.** We cannot discern from the record before us precisely what portion of Raymond's $2,467.78 monthly pension payment was earned by Raymond prior to or after the parties' marriage, as neither party presented evidence on these points. It is undisputed,

however, that Raymond worked and earned pension benefits for approximately 9 years before marrying Elaine, and for many years following the dissolution.

**7.** The amicus American Academy of Matrimonial Lawyers asserts that "there is no distinc-

both parties do here) without deciding that pension benefits earned before marriage are non-marital property, this fact alone does not foreclose the conclusion that pre-marital pension benefit payments may also be characterized as future income available for maintenance. The plain language of the statute authorizes courts to consider pension benefit payments as income[8] when calculating maintenance awards; this consideration is subject only to the rule, agreed to by both parties, that pension benefits that have previously been awarded as marital property cannot also be considered income.

As applied to this case, we agree with Elaine that the district court properly included payments derived from Raymond's pre-marital pension benefits in its calculation of Raymond's monthly income. The payments at issue were covered by the statutory definition of "gross income," and were received by Raymond well after the parties dissolved their marriage, qualifying

them as "future income" within the meaning of Minn.Stat. § 518.003, subd. 3a.

**B. Marital Pension Benefits Previously Awarded as Property**

■ When calculating Raymond's monthly income, the district court subtracted the portion of Raymond's pension income ($795.64) previously awarded to him as marital property,[9] and the court of appeals affirmed the district court's decision. *Lee,* 749 N.W.2d at 57. Elaine argues that the district court's exclusion of Raymond's pension income previously awarded to him as marital property was error. We disagree.

Minnesota Statutes § 518A.39, the provision authorizing the modification of a maintenance order, cautions courts that "all divisions of real and personal property provided by section 518.58 shall be final, and may be revoked or modified only where the court finds the existence of conditions that justify reopening a judgment under the laws of this state, including mo-

tion between pre-marital retirement claims and post-marital retirement claims and that to the extent retirement benefits have not been awarded as property they are appropriately considered as income for purposes of spousal maintenance." The amicus also observes, correctly we believe, that both pre-marital and post-marital property "[are] not, by definition, part of the marital estate." *See* Minn.Stat. § 518.003, subd. 3b (defining marital property) and Minn.Stat. § 518.58, subd. 1 (authorizing division of marital property). Such property is not, except in the most unusual of circumstances, ever part of the property award.

8. We note that Raymond never attempted in the lower courts to quantify how much of each pension payment might be considered income, and how much might be considered to be a return of principal representing the property that he acquired before (or after) marriage. We cannot say whether a different result would obtain on a different record. What we decide today is that based on the

record before us, and the plain language of the statutes, pension benefits earned before marriage and not previously awarded as marital property are considered income when received.

9. *See* Minn.Stat. § 518.003, subd. 3b (" 'Marital property' means property, real or personal, *including vested public or private pension plan benefits or rights,* acquired by the parties, or either of them, to a dissolution, legal separation, or annulment proceeding at any time during the existence of the marriage relation between them, or at any time during which the parties were living together as husband and wife under a purported marriage relationship which is annulled in an annulment proceeding, but prior to the date of valuation under section 518.58, subdivision 1." (emphasis added)). Here, the parties stipulated in the original judgment and decree that Raymond's pension rights accumulated during the marriage would be "allocated equally between the parties" as a part of the property division.

tions under section 518.145, subdivision 2." Minn.Stat. § 518A.39, subd. 2(f). In other words, absent mistake, fraud, newly discovered evidence, or other extraordinary circumstances, *see* Minn.Stat. § 518.145, subd. 2 (2008), courts may not upset the division of marital property made at dissolution in the course of modifying a maintenance order.

When calculating Raymond's monthly income, considering Raymond's marital pension benefits previously awarded to him as property would not necessarily divest Raymond of his marital property; he might have sufficient other income from which to pay the maintenance award. But including marital pension benefits previously awarded as property in Raymond's income would potentially increase the total amount of Raymond's maintenance obligation. This is akin to putting money into Raymond's left pocket while simultaneously removing money from his right pocket, in effect modifying the prior property division without finding the existence of the factors set forth in Minn.Stat. § 518.145, subd. 2.[10]

Here, when calculating Raymond's monthly income, we conclude that the district court properly declined to consider his pension income previously awarded to him as marital property.

### C. Post–Marital Pension Benefits

■ In calculating Raymond's monthly income, the district court included the portion of Raymond's monthly pension bene-

fits earned after the parties dissolved their marriage. The court of appeals reversed, holding that Raymond's post-marital pension benefits do not qualify as "future income" until Raymond has received the full value of his marital property award and pre-marital benefits. *Lee*, 749 N.W.2d at 57. The court of appeals concluded that "[w]hile neither party provided any evidence to establish the value of the pension benefits awarded at the time of the original decree, it is clear that for the foreseeable future, [Raymond's] monthly benefits payments will not equal that full value." *Id.*

The court of appeals rested its conclusion on two prior court of appeals decisions, both of which warrant a brief examination here. In *Kruschel v. Kruschel*, the husband-obligor was awarded sole ownership of his pension plan when the parties dissolved their marriage. 419 N.W.2d 119, 120 (Minn.App.1988). The district court also awarded maintenance to the wife-obligee. *Id.* Five years after dissolution, the obligor retired and petitioned the court to lower his maintenance obligation. *Id.* at 120–21. He argued that continuing to pay maintenance would force him to disgorge a portion of his pension benefits, which were previously awarded him as marital property. *Id.* at 121. The court of appeals agreed, citing Minn.Stat. § 518.64, subd. 2 (2004) (current version at Minn.Stat. § 518A.39, subd. 2(f)) (stating that "all divisions of real and personal property provided by section 518.58 shall be final").

---

10. Elaine did not challenge the decision of the lower court that included in her income her share of the pension payments, even though they were awarded to her as marital property. With respect to the party seeking maintenance, courts are instructed to consider "marital property apportioned to the party." Minn.Stat. § 518.552, subd. 2(a). However, when considering the property awarded to a spouse seeking maintenance, we have

looked at the income generated from that property, and not required the obligee spouse to invade the principal of the property to pay living expenses. *See Nardini v. Nardini*, 414 N.W.2d 184, 198 (Minn.1987); *Broms v. Broms*, 353 N.W.2d 135, 138 (Minn.1984). Because Elaine raised no issue regarding the inclusion of the pension payments in her income, we need not discuss the issue further.

419 N.W.2d at 121. The court of appeals remanded the case, and instructed the district court that "maintenance may not be ordered to be paid from [the obligor]'s pension payments until he has received from the pension an amount equivalent to its value as determined in the original property distribution." *Id.* at 123.

Similarly, in *In re Marriage of Richards*, the husband-obligor was awarded, as marital property, the entire value of his pension earned during marriage. 472 N.W.2d 162, 163 (Minn.App.1991). After the parties dissolved their marriage, the value of the obligor's pension benefits increased due to a change in the obligor's employer's benefits package. *Id.* The obligee argued that any pension payments received by the obligor in excess of the amount awarded to the obligor as property at divorce were "future income," and therefore available for maintenance payments. *Id.* at 165. The court of appeals agreed with the obligee but, relying on *Kruschel,* 419 N.W.2d at 121, held that because the obligor was entitled to $50,556 in pension benefits under the original decree, "until [the obligor] receives this amount, [the obligee] may not claim a share of increased pension income in excess of the original award." *Richards,* 472 N.W.2d at 165. In other words, the court of appeals adopted a no-apportionment rule, holding that all of the obligor's pension payments must be considered part of the obligor's property award until the sum of the payments exceeds the total award.

In this case, the parties agree with the rule articulated in *Kruschel* that Minnesota Statutes § 518A.39, subd. 2(f), prohibits district courts from using pension payments as an income source for mainte-

nance when the same pension benefits were previously awarded to the obligor as marital property. But the no-apportionment rule adopted by the court of appeals in *Kruschel,* as applied in this case, goes far beyond what is required to protect Raymond's interest in his property award. Of the $2,467.78 Raymond receives each month in pension payments, only $795.64 represents marital property previously awarded to him. As long as Raymond receives and keeps $795.64 in monthly pension payments, he receives exactly what the property award entitles him to receive—no more, no less.

Any rule allocating the entirety of his monthly pension payment to Raymond as marital property does so artificially; the $2,467.78 pension payment Raymond receives each month represents the cumulative benefit earned by Raymond for work performed throughout his career—before, during, and after his marriage to Elaine. Therefore, we disagree with the court of appeals that the amount Raymond receives each month in excess of his property award must be considered marital property until he receives the full value of his property award. Rather, any monthly amount exceeding $795.64 represents income that is not part of the property award. We hold that a district court may include in its calculation of an obligor's ability to pay maintenance the portion of an obligor's monthly pension payment exceeding the amount the obligor is entitled to receive each month as marital property. *Accord Olski v. Olski,* 197 Wis.2d 237, 540 N.W.2d 412, 413 (1995) (holding that postmarital pension benefits represented an income stream available for maintenance).[11] The district court properly in-

11. *See also* J. Thomas Oldham, *Divorce, Separation and the Division of Property* § 7.10 (2000) (stating that courts do not consider it improper to include pension rights earned

after divorce as available for possible maintenance because such rights would not have been included in initial property division); Brett R. Turner, *Equitable Distribution of*

cluded in its calculation of Raymond's monthly income the difference between Raymond's total monthly pension payment and the portion of Raymond's monthly pension payment previously awarded to him as marital property.

## II.

■ In light of our decision, some further comment is necessary on issues not reached by the court of appeals. In the court of appeals, Raymond challenged the district court's action in setting Elaine's monthly maintenance award at $700 per month. To arrive at the $700 per month figure, the district court conducted a "balancing of the parties' surpluses and shortages." The court of appeals questioned this action by the district court, which awarded Elaine roughly $424 more per month than her monthly expenses: "We comment on the district court's actions only to note that equalization of the parties' incomes by an adjustment of maintenance is without authority or precedent." *Lee,* 749 N.W.2d at 60 n. 2. The court of appeals was not required to take any further steps, because in its view, regardless of Elaine's needs, Raymond had no ability to make maintenance payments under the court of appeals' analysis of his income.

The concept of "reasonable needs" is a malleable one, and will vary from case to case depending on the unique characteristics of the party seeking maintenance and the standard of living established during the marriage. We have repeatedly stated that the support to which a divorced party is entitled "is not simply that which will supply her with the bare necessities of life." *Arundel v. Arundel,* 281 N.W.2d 663, 666 (Minn.1979). Rather, the obligee can expect a sum that will "[keep] with the

circumstances and living standards of the parties at the time of the divorce." *Botkin v. Botkin,* 247 Minn. 25, 29, 77 N.W.2d 172, 175 (1956); *see also Arundel v. Arundel,* 281 N.W.2d 663, 666–67 (Minn.1979); But here, the district court found that Elaine required $1,950 monthly to cover her reasonable needs and received $1,674.14 monthly in income from all sources before she received any maintenance. By awarding Elaine maintenance of $700 per month, the district court appears to have awarded Elaine more than she reasonably needed to support herself. On remand, the district court should reexamine the maintenance award with these principles in mind, and make appropriate findings to support the current maintenance award or a different award should the circumstances have changed.

■ The district court also ordered Raymond to obtain a life insurance policy naming Elaine as the beneficiary in the amount of $75,000, in order to secure the maintenance obligation that the court imposed. The court of appeals vacated the insurance award on the narrow grounds that Raymond lacked sufficient income to pay maintenance, and therefore had no obligation to secure with life insurance. *Lee,* 749 N.W.2d at 60–61. We note, however, that Raymond argued before the court of appeals that the district court erred by failing to make findings of fact with respect to his insurability and the cost of life insurance. The court of appeals apparently agreed, but again concluded no action was necessary in light of its decision on maintenance. *Id.*

Insurability and cost of insurance seem to us to be significant facts in determining both the propriety of an insurance require-

*Property* 343–44, 354 (2d ed. 1994) (stating that retirement benefits earned during the marriage should be treated as marital proper-

ty, while those earned after the divorce should be classified as separate property available for maintenance).

ment and the impact of the cost of insurance on Raymond's monthly expenses. The district court should make factual findings on these issues as well on remand.

## III.

■ Finally, we address two other issues raised by Elaine before this court. Elaine challenges the court of appeals' decision to change the effective retroactive date of the district court's order from May 1, 2006, to July 13, 2005, the day Raymond served his motion. *Lee,* 749 N.W.2d at 60. The court of appeals held that because the district court did not give an explanation for its choice of May 1, 2006, the order should have been made retroactive to the day Raymond served his motion on Elaine. *Id.*

Elaine argues that (1) the district court did not need to provide a factual basis for choosing the retroactive date that it did, and (2) if the district court was required to provide a factual basis for its retroactive date, the court of appeals should have remanded the case to the district court to provide an explanation for its choice of a date.

Minnesota Statutes § 518A.39, subd. 2(e), states that "[a] modification of support or maintenance ... may be made retroactive only with respect to any period during which the petitioning party has pending a motion for modification but only from the date of service of notice of the motion on the responding party." "May" is permissive. Minn.Stat. § 645.44, subd. 15 (2008). We agree with Elaine that the choice of retroactive date is committed to the discretion of the district court, as long as the date chosen is within the statutory limits. However, that discretion must be exercised based on the facts as found by the district court. Here, there were no factual findings to support the date chosen. On remand, the district court shall make

factual findings to support its choice of an effective date. *See In re Marriage of Schmidt,* 436 N.W.2d 99, 105 (Minn.1989).

Finally, we agree with the court of appeals that an award of attorney fees is committed to the discretion of the district court, and that there was no abuse of discretion here. *See Gully v. Gully,* 599 N.W.2d 814, 825 (Minn.1999).

Affirmed in part, reversed in part, and remanded.

DIETZEN, Justice (concurring).

I concur with the majority's decision in this case, but disagree with portions of its underlying analysis. Specifically, I disagree with the majority's analysis regarding the availability of Raymond's pre-marital pension benefits to calculate spousal maintenance. Additionally, I question how the rule announced by the majority, which makes post-dissolution pension payments available as a source for spousal maintenance except those allocated in the judgment and decree, would apply to distributions from defined contribution plans.

To prevail on a motion to modify spousal maintenance, the petitioner must show changed circumstances that make the terms of the original order unfair and unreasonable. Minn.Stat. § 518A.39, subd. 2 (2008). In subdivision 2(d) of section 518A.39, the legislature specifically instructs the district court to consider the factors relevant to an initial award of maintenance under Minn.Stat. § 518.552 (2008) to determine whether to modify spousal maintenance or not.

The majority concludes that pension benefits earned before marriage but received after the judgment and decree in the form of monthly benefits constitute "future income," and therefore are available for spousal maintenance under Minn. Stat. § 518.003, subd. 3a (2008). Under

the majority's reading of the statute, pre-marital benefits may avoid the designation of "future income," provided such benefits are allocated in the judgment and decree. The majority implies, however, that the district court may lack the authority to allocate pre-marital property, and that the allocation of such benefits in the property award only occurs in the most unusual circumstances.

I disagree with the majority that such agreements are either unusual or not enforceable between the parties. Rather, agreements to resolve property divisions and spousal maintenance are common place, and are enforceable provided the agreements are part of the judgment and decree entered by the court. *See, e.g.,* Minn.Stat. § 518.552, subd. 5 (allowing the parties to stipulate to limits on modifications of maintenance provided, among other things, that the stipulation is made part of the judgment and decree). In such cases, pension benefits that the parties have agreed are not available as a source for spousal maintenance should not be considered, even if such benefits are received after the marriage has been dissolved.

In my view, the legislature has given the parties broad rights in limiting the availability of pension benefits for the calculation of spousal maintenance. In particular, subdivision 5 of section 518.552 expressly allows parties through stipulation to preclude or limit the modification of maintenance, provided that the stipulation is made part of the judgment and decree. Subdivision 5 is an explicit recognition by the legislature that private agreements that preclude or limit the modification of spousal maintenance are enforceable, provided they are made part of the judgment and decree. Since parties may enter into enforceable agreements that preclude or limit the modification of spousal maintenance, it is axiomatic that they may also enter into enforceable agreements that limit or expand the income from which spousal maintenance may be paid. Similarly, antenuptial agreements are often used by parties before marriage to resolve potential future disputes over the characterization of property as marital or nonmarital and to resolve future disputes over spousal maintenance. Valid antenuptial agreements are also enforceable. *See* Minn.Stat. § 518.003, subd. 3b (2008) (including in the definition of nonmarital property real or personal property "excluded by a valid antenuptial contract").

Second, the majority's broad characterization of all pension benefits earned before marriage but paid after dissolution as "future income" under Minn.Stat. § 518.003, subd. 3a, creates ambiguity where none exists in the statute. Retirement plans may be divided into two general categories: defined contribution and defined benefit. On the one hand, a defined contribution plan provides an individual account for each employee participant, with retirement benefits based on the amount contributed to the account and any income, expenses, gains, or losses to the account. I.R.C. § 414(i) (2000). A 401k retirement plan is an example of a defined contribution plan in which employer and employee have the opportunity to contribute amounts into an individual account for the benefit of the employee. The amounts contributed to the account are invested by the plan and the balance of the account, consisting of contributions and income earned on those contributions, is available to the employee upon retirement. *See La-Rue v. DeWolff, Boberg & Assoc., Inc.,* 552 U.S. 248, 128 S.Ct. 1020, 1022 n. 1, 169 L.Ed.2d 847 (2008) (noting that the participant in a defined contribution or "individual account" plan is promised "the value of an individual account at retirement, which is largely a function of the amounts con-

tributed to that account and the investment performance of those contributions").

On the other hand, a defined benefit plan provides qualified employees with monthly retirement benefits, the amount of which is calculated according to the plan and which are paid from plan assets as a whole. *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 439, 440, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (noting that a defined benefit plan "consists of a general pool of assets rather than individual dedicated accounts" and "no plan member has a claim to any particular asset that composes a part of the plan's general asset pool"). Although employees may contribute to the fund, the employer or other plan sponsor agrees to contribute as much as is required to generate the promised benefit. *See id.* at 439, 119 S.Ct. 755 (noting that "[t]he asset pool may be funded by employer or employee contributions, or a combination of both" but that "the employer typically bears the entire investment risk and ... must cover any underfunding as the result of a shortfall that may occur from the plan's investments"). Thus, a defined benefit plan does not accumulate a principal amount for the employee, but rather "guarantees" a periodic payment to the employee upon retirement. *See Comm'r v. Keystone Consol. Indus., Inc.,* 508 U.S. 152, 154, 113 S.Ct. 2006, 124 L.Ed.2d 71 (1993) (concluding that in a defined benefit plan "the employee, upon retirement, is entitled to a fixed periodic payment").

The division of the marital portion of a defined contribution plan does not—indeed, cannot—involve the division of future payments from the plan. Because future payments from a defined contribution plan depend on future contributions and future returns on those contributions—amounts that are not known at the time of the judgment and decree—the division of the marital portion of a defined contribution plan requires the division of the plan balance itself, not the division of future payments from the plan. However, distributions from the plan upon retirement include not only distributions of the plan balance at the time of dissolution, but also distributions of contributions made after dissolution and increases in the plan balance after dissolution attributable to interest, dividends, and net increases in the value of the plan's investments.

It is unclear from the majority's approach whether all post-dissolution withdrawals from defined contribution plans, if made periodically, would be considered "future income" available as a source for spousal maintenance, Minn.Stat. § 518.003, subd. 3a, regardless of the allocation of the plan balance in the judgment and decree, because such distributions are "payments" within the meaning of Minn.Stat. § 518A.29 (2008).[1] Nor is it clear, if not all post-dissolution withdrawals from defined contribution plans would be considered "future income," how the majority would distinguish between those that are and those that are not. Given the increasing importance of defined contribution plans in today's economy, these are questions that I would answer in this case.

In my view, funds deposited to defined contribution plans before or during marriage and awarded to a party, by settlement agreement or otherwise, and made part of the judgment and decree, are not available to calculate spousal maintenance. But the income generated on the amount awarded in the judgment and decree is available to calculate spousal maintenance. Thus, I would draw a distinction between

---

**1.** I acknowledge that the monthly payments received by Raymond after dissolution in this case are apparently from a defined benefit, rather than a defined contribution plan.

the funds awarded to a party as property in the judgment and decree and the income earned on those funds after dissolution. Put differently, the portion of periodic payments made to the former spouse after dissolution that represents the "return of" the property award should not be available for spousal maintenance; but any "return on" the property award should be available for spousal maintenance. I recognize that determining how much of a given periodic payment is "return of" the property award versus "return on" the property award is a fact question, and may be a complex determination. But the "return on" the property award is "future income," within the meaning of Minn.Stat. § 518.003, subd. 3a, or "gross income" within the meaning of Minn.Stat. § 518A.29.