*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2150**

In re the Marriage of:

Pamela Kay Beltrand, petitioner,
Respondent,

vs.

Thomas Leo Beltrand,
Appellant.

**Filed September 8, 2014
Reversed and remanded
Schellhas, Judge**

Hennepin County District Court
File No. 27-FA-11-6982

Jade K. Johnson, David C. Gapen, Gapen, Larson & Johnson, LLC, Minneapolis, Minnesota (for respondent)

Becky L. Martin, Stefanie P. Wagner, Martin & Wagner, P.A., Rogers, Minnesota (for appellant)

        Considered and decided by Peterson, Presiding Judge; Schellhas, Judge; and

Klaphake, Judge.[*]

---

[*]  Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's order that he pay $5,600 per month in permanent maintenance to respondent. We reverse and remand.

## FACTS

When the district court dissolved the parties' 29-year marriage, appellant Thomas Beltrand worked about 50 hours per week for Premier Manufacturing Inc., an S corporation, in which he was a one-third owner; respondent Pamela Beltrand worked part time for a school district, where she had worked for almost 20 years. The parties resolved most dissolution issues through stipulations, reserving for trial determinations of the parties' reasonable monthly expenses, the amount of Thomas's distributions from Premier, and the award of permanent spousal maintenance to Pamela. They stipulated that Thomas would pay permanent maintenance to Pamela. They also stipulated that Thomas's average gross annual "W2 income" was $87,357.79, or $7,279.82 per month, and $5,868.64 per month "after [deducting for] retirement, taxes, [and] health insurance"; that Thomas's income also included discretionary distributions from Premier; that Pamela's average gross annual "W2 income" was $25,775.01, or $2,147.92 per month, and $1,648.83 per month after deducting "for taxes and retirement"; and that Pamela would receive $338,873 in retirement accounts as part of the dissolution property division.

The district court found that Thomas's monthly net W-2 income was $5,868.64 and that his average monthly gross distribution from Premier, based on the years 2006

through 2011, was $9,616.69. Thomas submitted a monthly budget of $10,922.88 and Pamela submitted a monthly budget of $8,197.14. Thomas asked the district court to award Pamela $1,750 as a base amount of monthly maintenance plus additional payments of 25% of after-tax distributions from Premier to be paid when he receives them. Pamela requested monthly maintenance of $7,200.

Following a trial before a referee, the district court awarded Pamela $5,600 per month in permanent spousal maintenance and denied Thomas's motion for amended findings and/or a new trial. This appeal follows.

## DECISION

Thomas argues that the court overestimated Pamela's need for maintenance, overestimated his ability to pay monthly maintenance, and abused its discretion by not ordering him to pay a base amount of monthly maintenance plus a percentage of his corporate distributions when he receives them.

"The district court's award of maintenance . . . will only be reversed on appeal if the court abused its [broad] discretion." *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009). The district court abuses its discretion by making "a clearly erroneous conclusion that is against logic and the facts on record," "by making findings unsupported by the evidence[,] or by improperly applying the law." *Dobrin v. Dobrin*, 569 N.W.2d 199, 202 (Minn. 1997) (quotation omitted). We must sustain findings unless clearly erroneous and defer to the district court's opportunity to assess witness credibility. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988). Findings are clearly erroneous when, viewing the record in the light most favorable to them, they leave us with "'the definite and firm

3

conviction that a mistake has been made.'" *Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000) (quoting *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999)) (other quotation omitted).

"The purpose of a maintenance award is to allow the recipient and the obligor to have a standard of living that approximates the marital standard of living, as closely as is equitable under the circumstances." *Melius v. Melius*, 765 N.W.2d 411, 416 (Minn. App. 2009) (quotation omitted). "In essence, the district court balances the recipient's needs against the obligor's ability to pay." *Maiers v. Maiers*, 775 N.W.2d 666, 668 (Minn. App. 2009); *accord Erlandson v. Erlandson*, 318 N.W.2d 36, 39–40 (Minn. 1982).

### Pamela's Need for Maintenance

We first address Pamela's need for maintenance because "[a] spouse's ability to pay maintenance does not . . . obviate the statutory mandate that the other spouse's own independent financial resources must be considered." *Lyon v. Lyon*, 439 N.W.2d 18, 22 (Minn. 1989); *see also Lee v. Lee*, 749 N.W.2d 51, 60 n.2 (Minn. App. 2008) ("[E]qualization of the parties' incomes by an adjustment of maintenance is without authority or precedent."), *aff'd in part, rev'd in part on other grounds*, 775 N.W.2d 631 (Minn. 2009).

#### Pamela's Reasonable Monthly Expenses

The district court found that Pamela's reasonable monthly expenses are $5,412. Based on Pamela's stipulated W-2 gross income of $2,148 and a monthly maintenance award of $5,600, the court found that Pamela will have a $274 after-tax surplus. Citing *Rask v. Rask*, 445 N.W.2d 849, 854 (Minn. App. 1989); *cf. Kampf v. Kampf*, 732 N.W.2d

4

630, 634 (Minn. App. 2007) (referring to the "speculative mortgage payment"), *review denied* (Minn. Aug. 21, 2007), Thomas argues that Pamela's surplus will be greater because her reasonable monthly expenses are $500 less than the $5,412 found by the district court because Pamela did not incur some of her claimed expenses, such as $54 for window-and-gutter cleaning, $50 for a home security system, $10 for AAA service, and $30 for golf and cross-country skiing. Pamela testified that these expenses were part of her "budget going forward." The district court found that Pamela's testimony was credible. In light of the parties' marital standard of living, we conclude that the district court did not clearly err by finding that these expenses are reasonable.

Thomas argues that the district court clearly erred by finding that Pamela's reasonable monthly expenses include $100 for a cell phone because Pamela shares a phone plan with her father and adult daughter and should only be allocated one third of the cost as a reasonable monthly expense. But the court found that Pamela "testified credibly that this cost was for herself only; her father and her daughter are on her plan, however, she subtracted the cost for them."

Thomas also argues that the court clearly erred by finding that Pamela's reasonable monthly expenses include $109 for pet boarding. But the court did not make such a finding. The court allowed Pamela $250 per month for reasonable monthly pet expenses (including checkups, medications, food, beds, supplies, and boarding). This amount is less than Pamela's requested amount of $330. Thomas argues that the district court clearly erred by finding that Pamela's reasonable monthly expenses include $140 for counseling. But the court credited Pamela's testimony that, although sometimes she

5

attended counseling only twice per month, she was attending counseling four times per month and paying $35 per visit. Although we might have reached a different decision regarding the reasonableness of Pamela's expenses, we defer to the district court's exercise of its discretion and cannot conclude that the district court abused its discretion on these facts.

Thomas also argues that the district court clearly erred by finding that Pamela has a $333 reasonable monthly expense for property taxes. We agree. The court based its finding on Pamela's testimony, and Pamela based her testimony on a percentage of an assumed value of the homestead rather than on the actual taxes assessed against the property. The parties' 2012 joint federal income tax return lists $2,973 as a deduction for real estate taxes paid, or $248 per month. The amount found by the court therefore exceeds the amount paid by $85. Pamela's reasonable monthly expenses must be reduced by $85 to arrive at a total of $5,341.

*Pamela's Need for Maintenance*

Thomas argues that the district court abused its discretion by not adding to Pamela's stipulated average net monthly W-2 income of $1,648.83 a monthly amount of interest that she could earn on the retirement accounts awarded to her. Thomas calculated that amount to be $17,000 annually at the rate of five percent on retirement accounts totaling $338,873. We reject Thomas's argument. "Minn. Stat. § 518.552, subd. 2(a) requires the courts to consider . . . income generated by *liquid* assets." *Fink v. Fink*, 366 N.W.2d 340, 342 (Minn. App. 1985) (emphasis added); *see also Lyon*, 439 N.W.2d at 22 n.1 (considering "interest income" that obligee would receive by investing marital-

6

property); *Broms v. Broms*, 353 N.W.2d 135, 138 (Minn. 1984) (similar); *Rask*, 445 N.W.2d at 853–54 (reasoning that maintenance was excessive when "interest income" that obligee would receive from marital-property award, "prudently invested," would "enable [her] to live comfortably"). But we have found no authority to support a proposition that courts must consider income that might be generated by *illiquid* retirement accounts. *Cf. Bury v. Bury*, 416 N.W.2d 133, 138 (Minn. App. 1987) ("[Obligee] should not be required to place herself at risk by liquidating her assets to meet her expenses."); *Kroening v. Kroening*, 390 N.W.2d 851, 855 (Minn. App. 1986) (stating parties' financial disparity was "large" when "[obligor] received liquid assets and ha[d] a high earning capacity" and "[obligee] received nonliquid assets in the property settlement and ha[d] a fairly low earning potential"); *Fick v. Fick*, 375 N.W.2d 870, 873 (Minn. App. 1985) (recognizing that, "while [obligee] received nearly $115,000 in assets upon dissolution of the marriage, most of those assets were non-liquid and not income producing").

The district court reasoned that Pamela would need the retirement accounts awarded to her for her retirement and that "there are virtually no liquid assets or assets that would generate a regular income for her." Indeed, at the posttrial hearing, Thomas did not challenge the statements of Pamela's attorney when she said, with regard to interest withdrawals from the retirement accounts, "We know that it's taxed. We know it's penalized." We conclude that the district court did not err by refusing to attribute to Pamela interest income on her retirement accounts or by refusing to require Pamela to make early withdrawals from her retirement accounts in order to pay her living expenses.

We conclude that the district court did not abuse its discretion by not including interest potentially earned from Pamela's retirement accounts when calculating her income.

The district court concluded that Pamela "should receive" $5,600 per month in maintenance "in light of the marital standard of living and all of the [section 518.552, subdivision 2 factors]." The court based that conclusion in part on its finding that the sum of $5,600 would leave Pamela with a surplus of $274. With the $85 downward adjustment to Pamela's reasonable monthly living expenses, her monthly surplus becomes $359. Although we conclude that the district court did not abuse its discretion by awarding maintenance in an amount that exceeds Pamela's needs by $359, we direct the district court's attention to the matter in light of our decision below. *See Lee*, 775 N.W.2d at 642 ("By awarding Elaine maintenance of $700 per month, the district court appears to have awarded Elaine more than she reasonably needed to support herself. On remand, the district court should reexamine the maintenance award with these principles in mind.").

### Thomas's Ability to Pay Maintenance

The district court must calculate maintenance based on a nonexclusive list of eight factors, which include the maintenance recipient's financial resources and maintenance obligor's "ability to meet needs while meeting those of the [recipient]." Minn. Stat. § 518.552, subd. 2(a), (g) (2012). "A finding of a maintenance obligor's ability to pay maintenance is required to support an award of maintenance," and "[a] district court's determination of income for maintenance purposes is a finding of fact and is not set aside unless clearly erroneous." *Peterka v. Peterka*, 675 N.W.2d 353, 357−58 (Minn. App.

8

2004). "[S]ection 518A.29's definition of gross income . . . appl[ies] to chapter 518, which governs maintenance." *Lee*, 775 N.W.2d at 635 n.5. But, "[i]n order to properly consider the financial ability of a spouse, the court must determine the spouse's net or take-home income." *Schreifels v. Schreifels*, 450 N.W.2d 372, 373 (Minn. App. 1990); *see Kostelnik v. Kostelnik*, 367 N.W.2d 665, 670 (Minn. App. 1985) (similar), *review denied* (Minn. July 26, 1985); *see also Passolt v. Passolt*, 804 N.W.2d 18, 25 n.3 (Minn. App. 2011) ("[A] district court may not compute the amount of a maintenance award based on an obligor's earning capacity, absent a finding of the obligor's bad faith or unjustifiable limitation of income."), *review denied* (Minn. Nov. 15, 2011); *Lynch v. Lynch*, 411 N.W.2d 263, 266 (Minn. App. 1987) ("Bonuses which provide a dependable source of income may properly be included in calculation of future income."), *review denied* (Minn. Oct. 30, 1987).

The district court found that Thomas's reasonable monthly expenses were $5,400 and calculated his total income and ability to pay maintenance as follows:

| | |
|---|---|
| Salary | $16,896[1] |
| Spousal Maintenance | (5,600) |
| Adjusted Monthly Income | 11,296 |
| Federal Income Tax[2] | (2,873) |

---

[1] The district court calculated this amount by adding Thomas's stipulated gross monthly W-2 income of $7,279.82 to his average gross monthly distributions of $9,616.69 from Premier. The $16,896 amount does not include the cost of Thomas's monthly health insurance premium paid by Premier or Thomas's one-third share of Premier's retained earnings.

[2] Because Thomas must pay income taxes on his one-third share of Premier's retained earnings, the district court calculated federal and state income taxes based on a salary of $19,014, which included Thomas's one-third share of Premier's retained earnings. The district court applied a combined federal and state tax rate of 33.7% to all of Thomas's income.

| | |
|---|---:|
| State Income Tax | (869) |
| Soc. Sec./Self-Emp't Tax | (661) |
| Mandatory Pension | (449) |
| Cash to Meet Living Expenses | $ 6,444 |
| Thomas's monthly needs | (5,400) |
| Surplus after Maintenance Paid | $ 1,044. |

Thomas argues that the district court erred in its calculation, claiming that the court included the amount of his health insurance premium, $434.36, in his income. But the district court did not do so, as evidenced by finding of fact XIII, which includes the following paragraph:

> 5. **Health Insurance.** For clarification, the Court included health and dental insurance in [Pamela]'s budget but not in [Thomas]'s budget (and he did not submit it as a line item in his budget, Exhibit 115). Expert testimony, Exhibit 91, and the parties' joint income tax returns show that [Thomas]'s health insurance is paid by Premier Manufacturing, Inc. It is thus considered income and then deducted. Therefore, the cost is neutralized and the Court has left it out of the calculations all together.

Thomas's income is comprised of both wages and profit distributions from Premier. Historically, Premier's distributions to shareholders have varied, sometimes greatly, in terms of timing and amount. For this reason, Thomas asked the district court to award maintenance in a base amount plus a percent of his distributions and reiterated this request, in his posttrial motion, bolstering his request with an offer to pay Pamela's attorney fees. Thomas argued to the district court that his distributions from Premier are undependable and variable and asked the district court to amend the judgment to include the following language:

> Commencing July 1, 2013: as and for permanent spousal maintenance, [Thomas] shall pay to [Pamela] the sum of $1,750 per month . . . .
>
> As and for additional spousal maintenance to [Pamela], [Thomas] shall pay to [Pamela] 25% of his net distribution within 10 days of receipt of such. [Thomas] shall provide a complete copy, including all schedules, of his Federal and Minnesota State income tax returns by no later than April 20th of each applicable year or a copy of his extension request and then once completed, within 10 days. In the event [Thomas] fails to timely and properly pay to [Pamela] this additional "distribution" spousal maintenance award and [Pamela] is forced to bring Court Action to secure payment, [Thomas] shall be financially responsible for [Pamela]'s reasonable attorneys' fees and Court Costs.

(Emphasis omitted.) Thomas acknowledged that "[i]f Premier continues to be successful, in all reality, Pam[ela]'s spousal maintenance award could exceed, on average, $5,600 per month" with an award of a base plus percent of the distributions. But he argued that $5,600 as a base amount of maintenance is inequitable because his net monthly W-2 income, as found by the court, is $5,868.64, leaving him without enough money to pay his monthly bills and unable to "buy anything, even groceries, because [he does] not know when the next distribution check is coming so that [he has] money in the bank."

The district court rejected Thomas's arguments, citing *McCulloch v. McCulloch*, 435 N.W.2d 564 (Minn. App. 1989), for the proposition that public policy disfavors Thomas's "proposed 'base-plus-a-percent' approach." And the district court stated that

> Husband can surely budget for his spousal maintenance payments and still meet his needs. . . . In a year such as 2012 that is above average, he needs to save enough for the years that may be below average. And if his business profits drop dramatically he may seek a modification from the Court.

11

Thomas argues on appeal that the averaging of his distributions from Premier exaggerate his ability to pay monthly spousal maintenance and his own monthly expenses. Citing *Doherty v. Doherty*, 388 N.W.2d 1, 2 (Minn. App. 1986), Thomas acknowledges that courts have expressed concern that a base-plus-a-percent maintenance award may lead to litigation in the future but correctly points out that the record contains no evidence suggesting that he has acted in bad faith or that he would fail to disclose financial information to Pamela. The record evidence shows that Thomas was forthcoming with all financial information for the business and Thomas argues that he would continue to do so if the court ordered that he pay maintenance to Pamela on a base-plus-a-percent basis.

Under the facts in this case, we conclude that the district court abused its discretion by ordering Thomas to pay monthly maintenance of $5,600, which exceeds his reasonable monthly expenses by $200. Over the six-year period of averaging used by the court, Thomas's distributions fluctuated greatly on an annual basis, as follows: $172,632 in 2006, $171,245 in 2007, $83,995 in 2008, $45,645 in 2009, $72,007 in 2010, and $146,878 in 2011. During the marriage, the parties shared the benefits and the uncertainty and risks associated with Thomas's receipt of the distributions. Under the $5,600 monthly maintenance award, Pamela is able to maintain her marital standard of living while Thomas is required to bear all uncertainties and risks associated with his receipt, or lack of receipt, of distributions from Premier. In consideration of the parties' marital standard of living, the award is inequitable. While "[a]n average takes into account fluctuations and [may] more accurately measure[] income," *Veit v. Veit*, 413 N.W.2d 601, 606 (Minn. App. 1987), a maintenance award must "keep with the circumstances and living standards

12

of the parties at the time of the [dissolution]," *Lee*, 775 N.W.2d at 642 (quotation omitted), and "allow the recipient and the obligor to have a standard of living that approximates the marital standard of living, as closely as is equitable under the circumstances," *Melius*, 765 N.W.2d at 416 (quotation omitted). A base-plus-a-percent award may be appropriate when, as here, a portion of the obligor's income is irregular. *See Frank-Bretwisch v. Ryan*, 741 N.W.2d 910, 916 (Minn. App. 2007) (child-support case) (citing *Novak v. Novak*, 406 N.W.2d 64, 68 (Minn. App. 1987) (concluding that district court did not abuse discretion by ordering base-plus-a-percent child-support award), *review denied* (Minn. July 22, 1987)).

Because the monthly maintenance award of $5,600 is inequitable and therefore reflects an abuse of discretion, we reverse the $5,600 maintenance award and remand to the district court for a base-plus-a-percent maintenance award. We leave to the district court's discretion the determination of both the base amount and the percentage of after-tax distributions. The district court may, in its discretion, reopen the record to determine the base amount of maintenance and percentage of distributions.

In light of our reversal of the maintenance award, we need not reach Thomas's argument that the maintenance award violated the Consumer Credit Protection Act. But, for the purpose of the remand, we note that the Act generally prohibits garnishment in excess of 60% of a person's disposable weekly earnings. 15 U.S.C. § 1673(b)(2)(B) (2012). We decline Thomas's request that we instruct the district court on remand to calculate his ability to pay maintenance under the Minn. Stat. § 518A.30 (2012) formula, in light of *Haefele v. Haefele*, 837 N.W.2d 703, 704−05 (Minn. 2013). *Haefele* turned on

13

application of section 518A.30's "plain language," 837 N.W.2d at 711, which was available to Thomas when he decided which arguments to raise in district court. Thomas did not make this request in district court and therefore waived it. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (quotation omitted)).

**Reversed and remanded.**